NORMAN REESE et al., Plaintiffs-Appellees, v. E. M. MELAHN et al., Defendants-Appellants.

(No. 70-227;

Second District—August 25, 1971.

Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan, for appellants.

Diver, Ridge, Brydges & Bollman, of Waukegan, for appellees.

Mr. JUSTICE BALES delivered the opinion of the court:

The defendants appealed from a decree of the court in favor of the plaintiffs in which the court ordered that the defendants account to plaintiffs and render to defendants 20% of the net proceeds from rent, issuances, and profits; that a constructive trust be imposed; and that 20% of the defendant, Highland Memorial Park, Inc., its assets, income, real estate, and all other property required be transferred to the plaintiffs.

The issues presented for review are as follows:

1. Was there sufficient competent evidence to prove an agency existed between McDonald, a real estate broker, and the defendant, E. M. Melahn?
2. Would the evidence establish that plaintiffs and defendant were joint adventurers?
3. Was there sufficient competent evidence to prove a contract was made between plaintiffs and defendants?
4. May a constructive trust be imposed to prove plaintiffs' interest?

The land in this case, referred to as the Clark property, was subject to use as a cemetery, and plaintiffs claim an interest in a cemetery project located on the Clark property.

In 1963 plaintiffs, together with Arthur B. McDonald, began a search for property adaptable to cemetery use. Several properties were shown, including the Clark property. McDonald introduced plaintiffs to possible investors, including defendant, E. M. Melahn, who had been engaged in road construction business for many years. The plaintiffs and McDonald met with Melahn, the plaintiffs presented a brochure of a memorial type cemetery, explained their backgrounds, and proposed that Melahn purchase the land and provide the money to operate the project; they to receive 50% of the ownership of the project as their interest. Melahn rejected this proposal and said that he would consider the matter further and would get back to them through McDonald.

An offer was made by Melahn, and communicated to the plaintiffs on October 25, 1963 through McDonald, in which he proposed to pay plaintiffs $7500.00 each year for their full time employment, and would set aside 20% of the stock of the planned cemetery project to be acquired by purchase.

Arthur B. McDonald died on September 15, 1966.

Reese and Doyle testified that in November of 1963, McDonald told them that Melahn was offering 20% for them, plus $7500.00 per year. They told McDonald they wanted 50% and rejected Melahn's offer. McDonald then contacted another potential investor. Both Doyle and Reese testified that they told McDonald that they accepted Melahn's offer. McDonald apparently called Melahn, telling him that Reese and Doyle had accepted his offer, that the details would have to be worked out and a contract drawn.

Defendant, Melahn, was called as a witness under section 60 of the Practice Act and testified that there was a meeting with McDonald, Reese and Doyle, McDonald having suggested and arranged the meeting. He retained McDonald to acquire the Clark property. Without authority, McDonald started paying Doyle, and in turn was paid by Melahn, but that Melahn ordered the payments to stop. After McDonald's death, Melahn paid to his estate $7600.00 for services rendered in connection with the cemetery land purchase.

McDonald requested Melahn to reduce the agreement to writing, but this was never done. The Clark property was conveyed to Highland Memorial Park Corporation.

Joe Huntley, an employee of McDonald, testified over objection of the Defendant as to a conversation between McDonald, Reese and Doyle. Joan Chamberlain, employed by McDonald, testified she wrote a letter of acceptance on behalf of Reese and Doyle of Melahn's offer, and neither the original or the copy of the letter could be produced. She testified that the letter made no reference to the formation of cor-

porations, capitalization, the total sum of money to be advanced by Melahn, and made no reference to the Clark land, and no reference to when Reese and Doyle were to get an interest in the Park.

Phillip McDonald, son of the deceased Arthur B. McDonald, testified for the plaintiffs that the documents pertaining to the Clark farm which were delivered to him as the executor of his father's estate were included in information dealing with the settlement of the commission on the sale, and that he had no other files.

It is the contention of the plaintiffs that McDonald was Melahn's agent for negotiating an agreement with them, and the defendant maintains that there was no credible evidence upon which the court could find that such an agency existed. The plaintiffs approached McDonald for the purpose of finding an investor who could furnish the funds to advance the project they had in mind. McDonald contacted Melahn in an effort to obtain the funds. The fact that Melahn stated to the plaintiffs at their only meeting that he could contact them through McDonald is not evidence of agency. McDonald, after this first meeting, contacted others, prospective investors, and Melahn in his testimony denied that McDonald acted as his agent to negotiate an agreement with the plaintiffs. The plaintiffs frequented McDonald's office, corresponded with him, and it is obvious that McDonald's purpose was to obtain financing for the plaintiffs.

Both parties cite *City of Evanston v. Piotrowicz* (1960), 20 Ill.2d 512. The court in that case stated at pages 518 and 519: "Agency may be established and its nature and extent shown by parol evidence, whether direct or circumstantial, and reference may be had to the situations of parties and property, acts of parties, and other circumstances germane to the question, and if the evidence shows one acting for another under circumstances implying knowledge on the part of the supposed principal of such acts, a *prima facie* case of agency is established.

It is equally well settled that where the existence of an agency is an issue in a case where the alleged principal is a party, the mere statements of the agent made out of the presence of the principal, and not consequently approved by him, are not ample to establish the existence of such relationship."

■ The burden of proof is upon the plaintiff to prove the existence of the alleged agency. The plaintiffs, in arguing that McDonald was an agent for Melahn, cite *Stone v. Stone* (1950), 407 Ill. 56, and a number of other cases.

■■ It is the contention of the plaintiffs that McDonald was authorized to act as the agent of Melahn to negotiate an agreement with the plaintiffs, and they were allowed to testify as to conversations they had with McDonald to support their contention. If this were true, the

court was in error in permitting Reese and Doyle to testify contrary to the Evidence Act (Ill. Rev. Stat. 1969, ch. 51, par. 4), the provision commonly referred to as the Dead Man's Rule. Under this rule they were not competent to testify as to conversations or admissions to McDonald, and if McDonald were not Melahn's agent, the conversations would not be admissible as hearsay. The trial court allowed Reese and Doyle's testimony on the basis that Melahn testified he made an offer, and that it would be unfair not to allow them to testify in view of Melahn's testimony. The agent was dead at the time of the trial, and section 4 of the Evidence Act cannot be disregarded simply because the principal was called under section 60. The law imposes the incompetency.

■ We believe there was not sufficient competent, relative and material evidence, direct and circumstantial, from which the trial court could reasonably conclude that McDonald was acting as agent for Melahn to negotiate a contract. It can only be concluded from the evidence that McDonald was the agent for the plaintiffs to secure financing for them from either Melahn or anyone else contacted by him.

Plaintiffs contend that there was sufficient competent evidence to prove that a contract was made between plaintiffs and defendant. The defendants cite *Snow v. Schulman* (1933), 352 Ill. 63, where the court states at page 71: "To constitute a contract and offer for acceptance, the acceptance must conform exactly to the offer, and although a reply to an offer purports to accept the offer, it is not an acceptance but is a counter-offer and does not create a contract where it adds qualifications and requires the performance of new conditions."

It is evident from the record in this case that there was an effort on the part of the plaintiffs, as well as McDonald, to have the agreement reduced to writing as there appeared to be differences and additions which had to be included. There simply was not a meeting of the minds at the time Reese and Doyle claim they told McDonald they accepted the offer made to them through McDonald by Melahn. It can be reasonably concluded that the parties never understood there was a contract until it was reduced to writing. Melahn did not submit a written contract, and Doyle prepared a written memorandum, the contents of which is uncertain because there is no proof even as to its being mailed. This proposed venture involved valuable land, a considerable investment, and the future responsibilities and complexities of a transaction of this kind, which was not agreed upon in entirety by the parties and never reduced to writing.

■ The trial court was in error in concluding that the parties had a meeting of the minds on essential terms as the evidence does not support this.

In regard to the trial court's decision in imposing a constructive trust,

and as to whether or not the plaintiffs and defendant were joint adventurers, we believe that the court was in error. Both parties cite *Ditis v. Ahlvin Construction Company* (1951), 408 Ill. 416. In that case many steps had been taken in the establishment of the corporation involved, value of stock, and other steps had been taken in the promotion of the business. The court, in that case, stated at page 425: "A joint adventure may be established without any specific formal agreement to enter into a joint enterprise and it may be implied or proved by facts and circumstances showing such an enterprise was in fact entered into. It is the nature of the enterprise undertaken that controls, not the form of the agreement. If a joint enterprise be proved, either by direct evidence or a mutual agreement, or by proof of facts and circumstances from which it is made to appear that such enterprise was entered into, the law fixes the rights of the parties."

In this case there is no corroborating evidence which would establish anything spelling out the relationship of the parties.

The plaintiffs make particular reference to *Hurst v. Papierz*, (1970), 262 N.E.2d 773, to support their contention that there was a joint adventure created. In that case there was an agreement in existence, and it was essentially admitted that there was an alleged contract to form a joint venture. The facts in that case are not similar to the facts in this case, and there was undisputed extensive evidence in that case to support a joint venture.

In *Perry v. Wyeth* (1962), 25 Ill.2d 245, the court at page 253 stated the law concerning constructive trusts as follows: "A constructive trust is one raised by operation of law as distinguished from a trust created by express agreement between the settlor and the trustee. It is imposed by a court of equity to prevent a person from holding for his own benefit an advantage which he has gained by reason of a fiduciary relationship, or by a fraud. Such a trust arises only when fraud is proven, or when advantage is taken of a fiduciary relationship by the dominant party. The proof of such fiduciary relationship must be clear and convincing, strong, unequivocal, and unmistaking as to lead to but one conclusion."

In several cases cited there was a written contract, but such did not exist here, and we previously decided that no contract whatsoever was established. In order to have a joint venture, there must be an agreement of some sort, and none existed here. There was no fraud alleged in the complaint, and certainly there was no clear and convincing proof of a fiduciary relationship. In the absence of a fiduciary relationship, the constructive trust cannot be created.

Obviously, the plaintiffs rendered services and their time, but there was no proof offered to establish the reasonable value of their time or services, and consequently cannot be considered by this court.

Judgment reversed.

MORAN, P. J. and ABRAHAMSON, J., concur.