508

## NORMAN REESE et al., Appellants, v. E. M. MELAHN et al., Appellees.

*Opinion filed January 26, 1973.*

HALL, MEYER, FISHER, HOLMBERG, SNOOK & MAY, of Waukegan (CHARLES M. MAY and EDWARD R. HOLMBERG, JR., of counsel), for appellants.

DIVER, RIDGE, BRYDGES AND BOLLMAN, of Waukegan (LOUIS W. BRYDGES, ROBERT L. BOLLMAN and JEFFREY R. DIVER, of counsel), for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In this action filed in the circuit court of Lake County, plaintiffs, Norman Reese and Mark Doyle, sought the imposition of a constructive trust on certain land and an accounting of the assets, receipts and disbursements of a cemetery business which they alleged was formed as a joint venture between plaintiffs and defendant E. H. Melahn. By its decree the circuit court imposed a constructive trust in favor of plaintiffs to the extent of 20% of the assets and profits of the cemetery business and ordered defendants Melahn and Highland Memorial Park, Inc., the corporation to which the land where the cemetery was situated had been conveyed, to make an accounting of assets, receipts and disbursements. The defendants appealed, the appellate court reversed the decree (1 Ill. App. 3d 63), and we allowed plaintiffs' petition for leave to appeal.

The evidence shows that plaintiff Doyle had worked as a cemetery-lot salesman and plaintiff Reese had been employed by several banks and finance companies in connection with the financing of installment-purchase contracts. They made plans to go into the cemetery business and agreed that Doyle would handle sales and development and Reese would handle the financial aspects of the enterprise. In their search for a suitable tract of land, they made the acquaintance of Arthur B. McDonald, a realtor, who showed them a number of parcels of land, among them being a 70-acre parcel known as the Clark property. He also introduced them to several prospective investors, including the defendant Melahn.

Melahn was a general contractor engaged primarily in the construction of roads and bridges. He had known

McDonald, who was also the secretary of the Illinois Road Builders Association, on a social basis for almost 35 years. McDonald arranged a meeting at Melahn's office for October 24, 1963. Present at this meeting were Reese, Doyle, McDonald and Melahn. Reese and Doyle were introduced to Melahn and they told him they had located a site suitable for a cemetery. They presented brochures of memorial garden cemeteries and the facts which showed a need for this type of cemetery in Lake County and gave him a resume of Doyle's background in the cemetery business and Reese's background in financial transactions. They proposed that Melahn finance the venture, that they develop and operate the cemetery and that the ownership be on the basis of 50% to Melahn and 50% to Doyle and Reese. Melahn said he would consider the proposal and would notify them through McDonald.

Melahn, through McDonald, rejected the proposal and made a counterproposal. Plaintiffs, also through McDonald, first refused, then accepted the counteroffer. Melahn testified that although plaintiffs had rejected his counteroffer, he permitted it to remain open and, although the record does not reflect when or in what manner plaintiffs were advised that the counteroffer had been withdrawn, there is no question that a counterproposal was made by Melahn and accepted by Reese and Doyle; this litigation arises from a dispute as to the terms of that counterproposal.

On January 23, 1964, Melahn purchased the Clark property subject to the issuance of a special permit for cemetery use. Reese and Doyle contacted ministers and churches in the area to urge acceptance of the new cemetery, made a house-to-house canvass to secure "pre-need leads" on families who did not own cemetery lots, and obtained 500 leads which were turned over to McDonald. They testified at the zoning hearing as to the need for the cemetery, met with the attorney employed to obtain the special-use permit and with the county planning

commission, and interviewed and negotiated with adjoining landowners for consents to the special use. Litigation to obtain the special-use permit, which included an appeal to the appellate court (*Brown v. County of Lake, 67 Ill. App. 2d 144*), was concluded early in 1966.

At the time of the trial McDonald had died. Plaintiffs testified, over objection, that McDonald stated to them that Melahn had rejected their proposal and offered as a counterproposal that they were to be paid $7500 each for their full-time services and were to receive 20% of the venture, and Melahn was to retain an 80% ownership interest. They testified that it was this counterproposal which they first rejected and subsequently accepted. Called for adverse examination under section 60 of the Civil Practice Act, Melahn testified that the counterproposal, which he made and which McDonald advised him had been accepted, was that Doyle and Reese would be employed on a full-time basis, each would be paid $7,500 per year and that he would set aside 20% of the stock of the corporation that would operate the cemetery, which stock Reese and Doyle would be permitted to purchase if they could make the venture profitable.

A chronology prepared for Melahn by McDonald from his diary at the time the zoning litigation was pending was offered by plaintiffs and admitted into evidence without objection, and there are no contentions on appeal with respect to either its admissibility or the purposes for which it could be considered by the trial court. The pertinent portion of this chronology reads:

> "October 24, 1963—Norm [Reese] and Mark [Doyle] and I drive to Algonquin for conference with Mike [Melahn] from 10 to 11:30 A.M. Mike shows real interest. Will see him in Springfield November 1.
>
> October 25, 1963—Mike calls—says Reese and Doyle are nuts on 50%—lucky to get 20%. Will give memo.
>
> November 8, 1963—Call Mike to return Norm Reese data.
>
> November 12, 1963—Wire Mike to return Memorial Park data.

November 15, 1963—Meet Mike for lunch at Wauconda regarding Memorial Park.

November 18, 1963—9:30 Norm and Mark (and Joe) here and I tell them Mike's offer is 20% for them plus $7500 per annum full time."

The decision of the appellate court, in part, is based upon its finding that the plaintiffs had failed to prove that McDonald was defendant Melahn's agent to negotiate a contract. Without citation of authority, the appellate court said that "if McDonald were not Melahn's agent, the conversations would not be admissible as hearsay." 1 Ill. App. 3d 63, at 67.

We do not find it necessary to decide whether McDonald was Melahn's agent to "negotiate" a contract, or whether the conversations to which plaintiffs testified were hearsay. He was Melahn's agent to transmit the counterproposal and its acceptance. In a written opinion, the trial court found that Melahn admitted that he had rejected plaintiffs' original proposal, that he had made them a counterproposal communicated through McDonald, that he had been advised by McDonald of the acceptance of the counterproposal, that he had received the diary entries from McDonald, and that he had reimbursed McDonald on two occasions for money paid plaintiff Doyle as a draw, both payments having been made several months after he was advised by McDonald of the acceptance of the offer. The court further found that the offer made and accepted was that plaintiffs received 20% of the venture. These findings of the trial court are supported by evidence the admissibility of which is not questioned. In the absence of a showing to the contrary it is presumed that in reaching its decision the trial court considered only the evidence which was properly admitted (*McFail v. Braden, 19 Ill.2d 108*), and this record presents the appropriate basis for the application of the presumption.

In *Schulenburg v. Signatrol, Inc., 37 Ill.2d 352,* we stated: "Although a trial court's holding is always

subject to review, this court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. [Citations.] Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof." We find no reason to disturb the trial court's finding with respect to the joint venture.

Joint adventurers, as a matter of law, stand in a fiduciary relationship to each other. (*Carroll v. Caldwell, 12 Ill.2d 487.*) Where property, which is the subject of a joint-venture agreement, is acquired by one of the joint adventurers and claimed as his own in breach of the agreement, equity will raise a constructive trust. (*Ridgely v. Central Pipe Line Co., 409 Ill. 46.*) The circuit court did not err in imposing a constructive trust on the assets of the venture.

The appellate court apparently concluded that there was no contract between the parties because no agreement had been reduced to writing, and defendant argues here that "There was never a contract between the parties as there was no meeting of the minds as to all of the necessary terms and conditions for a binding contract." It is true that the testimony does not cover all of the detailed matters that might be set out in a written contract, but as this court said in *Ditis v. Ahlvin Construction Co., 408 Ill. 416, 425,* "In a court of equity, the substance of the transaction, and not the form, is to be regarded in the determination of the rights of the parties. [Citation.] A joint adventure may be established without any specific formal agreement to enter into a joint enterprise ***. It is the nature of the enterprise undertaken that controls, not the form of the agreement." We note further that the matters which defendants contend are not proved, and to

which the appellate court opinion apparently refers, deal with salaries, commissions and "overrides," which plaintiffs allege were agreed upon but which were neither sought in the pleadings nor awarded in the decree.

Defendants contend further that if a contract existed between the parties it cannot be enforced for the reason that it is violative of the Statute of Frauds. Constructive trusts are expressly excluded from the operation of the Statute of Frauds. Ill. Rev. Stat. 1971, ch. 59, par. 9.

For the reasons stated the judgment of the appellate court is reversed and that of the circuit court is affirmed, and the cause is remanded to the circuit court of Lake County for further proceedings in accordance with this opinion.

*Appellate court reversed; circuit court affirmed and cause remanded.*