JOHN F. GOLEN, Plaintiff-Appellee and Cross-Appellant, v. CHAMBERLAIN MANUFACTURING CORPORATION, Defendant-Appellant and Cross-Appellee.

First District (5th Division)   No. 84—1252

Opinion filed December 13, 1985.

54

Charles C. Jackson and Kathryn A. Hamilton, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Robert E. Arroyo and Robert K. Neiman, both of Keck, Mahin & Cate, of Chicago, for appellee.

PRESIDING JUSTICE MEJDA* delivered the opinion of the court:

Plaintiff, John Golen, a former employee of the defendant, Chamberlain Manufacturing Corporation, brought this action seeking a declaratory judgment that the defendant is contractually obligated to pay him pension benefits equivalent to those pension benefits he would have accrued under Chamberlain's pension plan. Plaintiff moved for partial summary judgment on the issue of liability. Defendant filed a cross-motion for summary judgment based on the preemptive effect of the Employee Retirement Income Security Act (ERISA) (29 U.S.C.A. sec. 1001 *et seq.* (1985)) on plaintiff's pension claim and the deficiencies of plaintiff's claim under contract law. The trial court granted the plaintiff's motion but denied the defendant's motion. At the conclusion of the hearings on damages, the trial court entered judgment for the plaintiff in the amount of $50,000.

On appeal, defendant contends that the trial court should have denied plaintiff's motion for summary judgment because (1) ERISA preempts plaintiff's State law claim for pension benefits; (2) plaintiff failed to establish the existence of an enforceable contract binding on the defendant and (3) the trial court relied on testimony barred by the Dead Man's Act (Ill. Rev. Stat. 1983, ch. 110, par. 8—201). Plaintiff cross-appeals the amount of damages awarded by the trial court. We affirm.

Plaintiff began working for Sears Roebuck & Company (Sears) on July 6, 1965. He later left Sears and on March 12, 1973, accepted a position with the defendant. During his interview with defendant's president, Walter Petersen, plaintiff was offered credit for the seven years and eight months of employment with Sears, to be applied toward his vesting date in defendant's pension plan. Plaintiff wrote a memorandum to Petersen on July 6, 1973, reminding Petersen of his offer of pension credits and asking Petersen for written documentation of the agreement. After writing "O.K. W.R. Petersen 7/9/73" after each paragraph of the memorandum, Petersen wrote "use a copy of this for your file" to document the agreement. Plaintiff wrote to Petersen again on September 7, 1973, requesting Petersen's approval of special pension credits for himself and another employee. Petersen

---

*This opinion was authored and concurred in prior to the retirement of Presiding Justice Mejda from the court.

initialed the memorandum instructing the plaintiff to "file a copy of this with the individual records." The authenticity of Petersen's handwriting is not in dispute.

When Petersen died in May 1976, John Sommers became the defendant's president. Plaintiff spoke with Sommers about the agreement and showed him the memoranda documenting the agreement. Sommers expressed doubts concerning the validity of the agreement. After conferring with defendant's general counsel, Sommers told the plaintiff that Petersen did not have the authority to agree to grant plaintiff pension credit for past service without the approval of the board of directors. Because defendant was undergoing a reorganization at this time, plaintiff submitted his resignation on September 22, 1981. Plaintiff had then worked for the defendant for 8½ years, just 1½ years short of the 10 years required to vest in defendant's pension plan. If defendant had credited plaintiff with the time he worked for Sears, plaintiff would have vested in the plan.

Prior to submitting his resignation, plaintiff discussed with Sommers two possible ways to enable him to vest in defendant's pension plan: Sommers could recommend to defendant's parent company that defendant honor its contract with the plaintiff to credit him with his time at Sears or Sommers could recommend that plaintiff be placed on a leave of absence or do consulting work while remaining on defendant's payroll until plaintiff vested in the pension plan independent of the pension credit agreement. The parent company rejected both suggestions. Plaintiff was formally notified of the decision to reject these requests on December 3, 1982.

In January 1983, plaintiff filed this action against the defendant seeking a declaratory judgment that defendant is contractually obligated to pay the plaintiff pension benefits equivalent to those pension benefits he would have been entitled to under defendant's pension plan, assuming the term of plaintiff's employment with Sears was added to the term of his employment with the defendant. On motion of the plaintiff, the trial court granted summary judgment on the issue of defendant's liability. The court found that Petersen, as president of the company, had both actual and apparent authority to enter into the pension credit agreement with the plaintiff and that plaintiff had relied on the promise. The trial court denied defendant's motion for summary judgment because it found that plaintiff's action was to enforce his employment contract with defendant and was not a pension claim under ERISA. At a later hearing on damages, the trial court awarded the plaintiff $50,000. Defendant appeals.

Opinion

The first issue defendant raises is whether plaintiff's State law claim is preempted by ERISA and, therefore, Federal law should apply.

Section 1144(a) of ERISA provides:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975." (29 U.S.C.A. sec. 1144(a) (1985).)"

Congress also granted exclusive jurisdiction to the Federal courts over all actions arising under the subchapter of ERISA dealing with the protection of employee benefit rights. (29 U.S.C.A. sec. 1132(e)(1) (1985).) It, however, granted concurrent jurisdiction to the States over actions brought by a participant or beneficiary to recover benefits due him under the terms of that plan, or to enforce or clarify his rights under the terms of that plan. 29 U.S.C.A. sec. 1132(a)(1)(B) (1985).

Defendant contends that section 1144(a) constitutes a comprehensive preemption provision that supersedes all State laws that "relate to" employee benefit plans. The alleged contract involved here, defendant maintains, unquestionably relates to its pension plan and cannot be understood without a detailed reference to the plan.

Section 1144(a) specifically provides that the provisions of the subchapter dealing with the protection of employee benefit rights "shall supersede any and all State laws *insofar as they may now or hereafter relate to any employee benefit plan.*" (Emphasis added.) Thus, the question confronting us is whether plaintiff's State law claim for a declaratory judgment as to defendant's contractual liability *relates to* the pension plan.

■ A State law which directly regulates the content or operation of an ERISA plan is preempted by section 1144(a). (*Witkowski v. St. Anne's Hospital of Chicago, Inc.* (1983), 113 Ill. App. 3d 745, 447 N.E.2d 1016.) When State law only tangentially impacts upon an ERISA plan, however, Federal law does not preempt the State law. For example, in *Shaw v. Westinghouse Electric Corp.* (1980), 276 Pa. Super. 220, 419 A.2d 175, plaintiff brought an assumpsit action against his employer for disability and retirement benefits. Plaintiff alleged that one of the terms of his contract of employment with defendant was that plaintiff would receive a pension based upon 60% of his base salary. He alleged that defendant did not pay him prom-

ised salary increases, thus causing him to lose bonuses and pension benefits. Defendant moved to dismiss for lack of subject matter jurisdiction. The court held that the action was not preempted by ERISA. The action did not constitute an attempt to regulate areas explicitly governed by the provisions of ERISA, but rather related primarily to matters not governed by ERISA, and only indirectly affected defendant's employee benefit plan in a way not in conflict with purposes ERISA was designed to achieve.

■ In the instant case, the essence of plaintiff's claim is that the defendant is liable for breach of an employment contract for pension credits. Plaintiff's claim does not concern the substance of the plan, nor does it concern the regulation of a pension plan. Although the trial court's determination of damages required some consideration of the terms of the plan, the pension plan is only tangentially or incidentally involved. We find that plaintiff's claim is not governed by ERISA and that the trial court properly considered the merits of the claim.

■ Defendant's second contention is that the trial court erred in granting plaintiff's motion for summary judgment on the issue of liability. A defendant may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part of the relief sought against him. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(b).) The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) In determining whether there exists a genuine issue of material fact, the court considers the entire record and construes the evidence strictly against the moving party and liberally in favor of the opponent. *Spancrete of Illinois, Inc. v. Brickman* (1979), 69 Ill. App. 3d 571, 388 N.E.2d 47.

In support of this contention, defendant argues that the terms of the pension credit contract are indefinite. We find no merit in this contention. Where the terms of a contract are clear and unambiguous, they must be enforced. (*Madigan Brothers, Inc. v. Melrose Shopping Center Co.* (1984), 123 Ill. App. 3d 851, 463 N.E.2d 824.) Contract language is not rendered "ambiguous" simply because parties do not agree upon its meaning. (*McCarthy v. Johnson* (1983), 122 Ill. App. 3d 104, 460 N.E.2d 762.) Our review of the memoranda of July 6, 1973, and September 7, 1973, discloses that the agreement was that the plaintiff was to be given credit for the time period during which he was employed by Sears so that his starting date with the defendant

was July 6, 1965, and that this time was to be credited towards plaintiff's inclusion in the pension plan. By initialing the memoranda and instructing plaintiff to file the documents in his personnel file, it is our view that Petersen intended the memoranda to serve as the requested written confirmation that the defendant would regard plaintiff as having been a participant in its pension plan since July 6, 1965. From these agreements, the trial court could have properly concluded that there was no genuine issue of material fact as to the terms of the contract.

■■ Defendant also argues that the pension plan was not incorporated by reference into the pension credit contract. For a document to be incorporated by reference, a contract must show an intent to incorporate the other document and make it part of the contract. (*Pinson v. Allstate Insurance Co.* (1979), 68 Ill. App. 3d 788, 386 N.E.2d 638.) The intent to make the pension plan part of the agreement is evident here where the credit for plaintiff's time with Sears would have little relevance other than to be added to the time he was employed by the defendant for determining when he would be included in the defendant's pension plan.

■■ Defendant also asserts that Petersen had neither actual nor apparent authority to enter into a contract with plaintiff. Defendant's contention is meritless. Petersen, as defendant's president, possessed the authority to execute contracts in the ordinary course of business. (*Diversification Consultants, Inc. v. Candy-Gram, Inc.* (1970), 130 Ill. App. 2d 1029, 264 N.E.2d 788.) Only unusual or extraordinary contracts require the approval of the corporation's board of directors. (*Southwest Forest Industries, Inc. v. Sharfstein* (7th Cir. 1972), 482 F.2d 915.) As president, Petersen was invested with the general control and management of the business affairs of the corporation, which clearly included the power to hire new employees. Thus, Petersen had the actual authority to hire the plaintiff and to set the terms of his employment. The contract between plaintiff and defendant was not so extraordinary or unusual as to require the approval of the board of directors.

The defendant's final contention is that the trial court erroneously relied on testimony barred by the Dead Man's Act. Because the plaintiff's complaint, deposition testimony and argument are based on conversations with Petersen, and the trial court stated that it reviewed the depositions and pleadings in making its decision, defendant argues that the trial court erred in relying on this inadmissible testimony.

■■ It is true that a party to an action is incompetent to testify regarding a conversation with the deceased agent of an adverse party

unless there was a surviving agent who was also present during the conversation. (*Reese v. E.M. Melahn* (1971), 1 Ill. App. 3d 63, 272 N.E.2d 788, *rev'd on other grounds* (1973), 53 Ill. 2d 508, 292 N.E.2d 375.) We find nothing in the record to indicate that the trial court relied on the conversations between the plaintiff and Petersen to establish the existence or terms of the contract. The trial court stated that "the memorandums are sufficient to indicate intent by the president on behalf of the Chamberlain Manufacturing Corporation to allow credit to Mr. Golen upon its assumption and in return for his assumption of employment with Chamberlain Manufacturing and departing Sears Corporation that he would receive such credit." As is required on a motion for summary judgment, the trial court reviewed the depositions and pleadings. The court, however, relied solely on the written memoranda in deciding to grant plaintiff's motion for summary judgment on the issue of liability.

On cross-appeal, plaintiff contends that the trial court's award of $50,000 damages is insufficient to make him whole. He argues that the evidence at the damages hearing showed that tax consequences necessitated an award of $90,800 in order to net plaintiff the after-tax income needed to purchase an annuity paying him the monthly amount of $481 he would have received absent defendant's breach.

The purpose of damages is to place the nonbreaching party in the position he would have been in had the contract been performed, but not in a better position; compensation awarded in a breach of contract action should not provide the plaintiff with a windfall recovery. (*Bachewicz v. American National Bank & Trust Co.* (1984), 126 Ill. App. 3d 298, 466 N.E.2d 1096.) Joseph Beres, defendant's actuary, testified that if plaintiff received credits for service with his previous employer and vested in defendant's pension plan, plaintiff would be entitled to $481 per month, beginning at age 55 and continuing for life, if plaintiff had elected the early retirement option. Beres stated that an annuity paying plaintiff $481 per month for life beginning at age 55 would cost $45,400. He noted that this price was a group annuity price and that it would cost an individual 10% to 30% more to buy an annuity. Based on Beres' testimony regarding both the price of purchasing an annuity and plaintiff's failure to contribute $6,000 to $7,000 to the plan as required during the years he was to receive credit for his service with Sears, the trial court awarded plaintiff $50,000.

We find that the trial court's award places the plaintiff in the position he would have been in had the contract been performed. We recognize that had the plaintiff received payments under the plan, he

would have been taxed on those monthly payments. The award plaintiff seeks is an attempt to avoid the taxes he normally would have to bear on monthly pension payments. Under contract law, plaintiff is not entitled to the windfall recovery he now seeks. We find no error in the award of damages.

For the aforementioned reasons, the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN and PINCHAM, JJ., concur.