ALBERT JOHNSON, JR., Plaintiff-Appellant, v. WATERFRONT SERVICES COMPANY *et al.*, Defendants-Appellees.

Fifth District   No. 5—07—0458

Opinion filed May 28, 2009.

John R. Patchett, of Patchett Law Office, of Marion, and Gary D. Greenwald, of Keller Rohrback, P.L.C., of Phoenix, Arizona, for appellant.

Eric D. Martin and Robert J. Tomaso, both of Blackwell Sanders LLP, of St. Louis, Missouri, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Albert Johnson, Jr., filed a complaint against defendants, Waterfront Services Company and Geoffrey C. Smith, in the circuit court of Alexander County. The court entered a summary judgment in favor of defendants. The appeal raises two issues: (1) whether plaintiff's complaint was preempted by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §1001 *et seq.* (2006)) and (2) whether the trial court erred by entering a summary judgment on plaintiff's claim of fraudulent misrepresentation. We reverse and remand.

## FACTS

On March 12, 2003, plaintiff filed suit against defendants in the circuit court of Alexander County. Plaintiff alleged that in September 1984 he was hired as a dispatcher for Consolidated Grain and Barge Marine (Consolidated). In 1988 he became a licensed tugboat operator. In 1990, the officers of Consolidated formed Olympic Marine, which in 1994 became known as Paragon Marine Services, Inc. (Olympic/Paragon).

Plaintiff alleged that in 1990, Waterfront Services Company (Waterfront) established the Waterfront Services Company Employee Stock Option Plan (ESOP). In February 1993, Consolidated and Olympic/Paragon entered into a joint venture with Waterfront whereby the companies pooled their resources and jointly provided barge repair services. Plaintiff remained an employee of Olympic/Paragon. Plaintiff alleged that during all times of the joint venture, "Waterfront maintained separate employees, payrolls, employee benefits[,] and chains of command from Consolidated and Olympic/Paragon."

Plaintiff alleged that on several occasions in 1997 and 1998, Smith, the president of the board of directors of Waterfront, asked him to become an employee of Waterfront. Plaintiff further alleged that he declined these entreaties because he would lose the seniority he had with Olympic/Paragon. Plaintiff alleged that he was also reluctant because he had a history of negative experiences with Smith, and Smith would become his supervisor with an ability to fire him.

Smith allegedly offered several enticements for him to join the Waterfront payroll, including promises of superior health insurance and a pay raise. Smith also allegedly promised as follows:

"(b) [Plaintiff] would receive shares of Waterfront stock through the ESOP as though he had been employed by Waterfront from the date on which the ESOP came into existence, which was June 1, 1990;

(c) [Plaintiff] would receive service credit, for purposes of vesting in the ESOP, that would be calculated from the date on which [plaintiff] became employed by [Consolidated] ***."

In October 1998, plaintiff left Olympic/Paragon and became an employee of Waterfront under Smith's direct control and supervision. Plaintiff alleged that he accepted the job, and left his old position, in reliance on Smith's promises. Plaintiff alleged that upon joining the Waterfront payroll, he received the promised pay raise, as well as credit for his years of employment with Consolidated and Olympic/Paragon, but that he was not provided a statement of his ESOP account until August 1999. The statement reflected 100% vesting, but the shares had not begun to accumulate until October 1998. In August 1999, plaintiff confronted Smith, who responded that Waterfront had "run out of" treasury shares. When plaintiff continued to pursue the matter, he was threatened with termination. Plaintiff was terminated on January 15, 2002.

Plaintiff's complaint contained two counts. Plaintiff labeled count I "Fraud." Plaintiff alleged that defendants engaged in knowing misrepresentations and omissions that he would receive shares in the ESOP as if he had been a participant since its inception on June 1,

1990. He also alleged that these misrepresentations and omissions were material to his decision to leave his job with Olympic/Paragon and that he was deceived by the misrepresentation. Plaintiff labeled count II "Promissory Estoppel," alleging that Waterfront should have foreseen that he "would rely on its promise of retroactive share allocation."

Defendants filed a motion for a summary judgment (735 ILCS 5/2—1005(b) (West 2004)). Plaintiff attached several exhibits to his response and submitted an affidavit that he had accepted an offer of employment based on Smith's promise of a pay increase, superior health care, and shares of stock dating back to when the plan came into existence. Plaintiff attested that he would not have left his previous job had it not been for Smith's promise of retroactive service status. He admitted that he had no experience or knowledge whatsoever regarding the plan other than what he had been told by Smith and read in the "Summary Plan Description." Plaintiff attested that he sought advice from other Waterfront employees, including Jim Patterson and Harold McClendon. Plaintiff further attested that Harold McClendon, a longtime employee of Waterfront, did not question the validity of the offer or indicate that any plan amendments were necessary to complete the action.

Plaintiff attached portions of the transcript of the discovery deposition of Smith. Smith testified that he played no role in implementing the joint venture and had nothing to do with what the employees of Olympic/Paragon were told when they came over to Waterfront. Smith described the offer he made to plaintiff, a promise to match vacation pay and better health insurance. Smith described the other benefits he offered:

"Q. [Plaintiff's attorney:] Well[,] did you tell [plaintiff] anything about your ESOP?

A. I told him that he would be able to participate in the ESOP.

Q. Tell him anything else about the ESOP?

A. I believe he asked some questions about the ESOP. And I told him that he would be able to get vesting service credit just like the guys that had come over from [Consolidated] and [Olympic/Paragon] in 1993. So that whenever he became eligible and actually received his first allocation that based on his prior service he'd be 100 percent vested.

Q. Anything else?

A. No, sir.

Q. What was [plaintiff's] reaction to that proposal?

A. He wanted—if I recall, he wanted to think about it. He wanted to talk to Goat or Jim Patterson about it, as having been his boss for a period of time. And I guess give it some thought himself."

Plaintiff also submitted an affidavit from Edward Smith, who negotiated the joint venture between Consolidated and Waterfront in 1993. Smith attested that any employees of Consolidated or Olympic/Paragon prior to March 1, 1993, would be credited for employment on the same basis as if that service had been with Waterfront. Smith stated that the agreement was for the purpose of treating each employee as a Waterfront ESOP participant for service and vesting purposes from the date of the formation of the ESOP in 1990 or the date of their hire by Consolidated or Olympic/Paragon.

James Patterson testified that when the joint venture was formed, all the employees of Olympic/Paragon, except plaintiff, were changed into employees of Waterfront. Patterson testified that these employees were grandfathered into the ESOP and were treated as if they had been Waterfront employees from the time the ESOP was formed. Patterson testified that plaintiff discussed Smith's offer of employment and that plaintiff stated he was going to be grandfathered in as a member of the ESOP from its inception.

On July 16, 2007, the court entered an order granting defendants' motion for a summary judgment. The court found as follows:

"1. Waterfront Services ESOP is governed by a plan document, which became effective June 1, 1990. The document has been amended several times[,] but these amendments did not change the ESOP rules pertaining to eligibility for participation or allocation of shares, but only rules pertaining to vesting credit.

2. There was never a written offer of employment made to Plaintiff, or a written employment contract, but Plaintiff became a Waterfront Services employee in June, 1998.

3. Plaintiff never memorialized the alleged representation by Defendant, Geoffrey C. Smith, to Plaintiff concerning shares in the Waterfront Services employees stock ownership plan.

4. Any alleged representation of retroactive share allocation made to Plaintiff[ ] directly contradicted the written plan as to eligibility and share allocation provisions."

Plaintiff appeals.

## ANALYSIS

### I

Defendants contend that this case is subject to conflict preemption under ERISA. Initially we note that defendants waived the issue. Defendants contend that the trial court addressed the issue by ruling that any alleged misrepresentation conflicted with the written plan. The trial court, however, never addressed the issue of federal preemption. In contrast, the United States District Court for the Southern

District of Illinois granted plaintiff's motion to remand the matter as not subject to complete preemption under ERISA. Case No. 03—CV—4081—JPG (S.D. Ill. November 18, 2003) (order). This appeal is not controlled by the findings of the district court on complete preemption, nor are we obligated to address an issue that defendants have waived. Nonetheless, we believe that the issue of conflict preemption warrants review. See *Gee v. Treece*, 365 Ill. App. 3d 1029, 1035, 851 N.E.2d 605, 611 (2006).

■ ERISA's preemption clause provides, "[ERISA] shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ***." 29 U.S.C. §1144(a) (2006). As defendants correctly assert, the preemption clause is expansive. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 640 (7th Cir. 2007). Defendants point to instances where claims for enhanced benefits based on oral modifications of ERISA plans have been found to be preempted and without merit. *Lister v. Stark*, 890 F.2d 941, 945 (7th Cir. 1989); *Chapman v. Health Works Med Group of West Virginia, Inc.*, 170 F. Supp. 2d 635, 640 (N.D. W. Va. 2001); see *Warren v. Blue Cross & Blue Shield of South Carolina*, No. 97—1374 (4th Cir. 1997) (unpublished disposition); *Trainor v. SBC Services, Inc.*, No. 04 C 779 (N.D. Ill. 2004) (unpublished memorandum opinion and order). Defendants' approach mischaracterizes plaintiff's claim and ignores the limits of preemption.

Although expansive, preemption has limits. These limits are best illustrated by a previous appeal involving the parties to the dispute at hand. *Housman v. Albright*, 368 Ill. App. 3d 214, 221, 857 N.E.2d 724, 731 (2006). In *Housman*, the plaintiffs, including Albert Johnson, Jr., filed a shareholders' derivative suit against the board of directors of Waterfront, including Geoffrey Smith. The plaintiffs alleged that Smith had engaged in a scheme of systematic corporate looting and self-dealing. *Housman*, 368 Ill. App. 3d at 217, 857 N.E.2d at 728.

*Housman* acknowledged that the broad language of the exemption provision expressed "Congress's intent to establish an area of exclusive federal concern." *Housman*, 368 Ill. App. 3d at 221, 857 N.E.2d at 731 (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139, 112 L. Ed. 2d 474, 484, 111 S. Ct. 478, 483 (1990), and *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 324, 136 L. Ed. 2d 791, 799, 117 S. Ct. 832, 837 (1997)). Nonetheless, the provision is limited. *Housman*, 368 Ill. App. 3d at 221, 857 N.E.2d at 731 (relying on *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 655, 131 L. Ed. 2d 695, 705, 115 S. Ct. 1671, 1677 (1995)). *Housman* stated the criteria for preemption:

"Preemption must have its limits because otherwise it would effectively drag into federal court 'many ordinary state common law causes of action that rightfully fall within the purview of adjudication by state courts, as well as state law claims that implicate federal law as ancillary issues or defenses that state courts are suitably equipped and concurrently empowered to resolve—litigation that need not add its incremental burden to the federal docket.' *Atlantis Health Plan, Inc. [v. Local 713]*, 258 F. Supp. 2d [284,] 291 [(S.D.N.Y. 2003)].

In the instant case, the defendants bear the burden of overcoming the presumption that Congress, in enacting ERISA, did not intend to supplant state law, especially traditional areas under state control, such as corporate law. See *In re World Trade Center Disaster Site Litigation*, 270 F. Supp. 2d 357, 367 (S.D.N.Y. 2003), *aff'd on other grounds*, 414 F.3d 352 (2d Cir. 2005). As long as a state law ' " " 'does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the [law] has some economic impact on the plan does not require that the [law] be invalidated.' " ' *Airparts Co. v. Custom Benefit Services of Austin, Inc.*, 28 F.3d 1062, 1065 (10th Cir. 1994), quoting *Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc.*, 944 F.2d 752, 754 (10th Cir. 1991), quoting *Rebaldo v. Cuomo*, 749 F.2d 133, 139 (2d Cir. 1984)." *Housman*, 368 Ill. App. 3d at 221-22, 857 N.E.2d at 731-32.

*Housman* found no preemption. The suit was not based on investing the plan's assets or administering the plan, but on day-to-day corporate business transactions. The complaint did not allege that the trust was involved in any improper transactions. Instead, the suit was brought against the defendants in their capacities as directors of the corporation and not in their capacities as plan fiduciaries. *Housman*, 368 Ill. App. 3d at 222, 857 N.E.2d at 732.

This case is directly in line with *Golen v. Chamberlain Manufacturing Corp.*, 139 Ill. App. 3d 53, 55, 487 N.E.2d 121, 124 (1985). In *Golen*, the plaintiff claimed that the defendant was contractually obligated to pay pension benefits. The plaintiff alleged that during his job interview, the president of the defendant lured him to leave his then-current job by offering credit toward the defendant's pension plan for the eight-plus years of service he had rendered at that job. The plaintiff accepted the offer. The plaintiff worked for the defendant for 8½ years, but the pension plan did not vest until the tenth year. The plaintiff sought a declaratory judgment that the defendant was obligated to pay pension benefits with the addition of his term of employment from his previous employer. The defendant claimed federal preemption. *Golen*, 139 Ill. App. 3d at 57, 487 N.E.2d at 124-25.

*Golen* noted that although a state law which directly regulates the content of ERISA is preempted, there is no preemption if the state law only tangentially impacts the ERISA plan. *Golen* concluded as follows:

"In the instant case, the essence of plaintiff's claim is that the defendant is liable for breach of an employment contract for pension credits. Plaintiff's claim does not concern the substance of the plan, nor does it concern the regulation of a pension plan. Although the trial court's determination of damages required some consideration of the terms of the plan, the pension plan is only tangentially or incidentally involved. We find that plaintiff's claim is not governed by ERISA and that the trial court properly considered the merits of the claim." *Golen*, 139 Ill. App. 3d at 58, 487 N.E.2d at 125.

■ Similarly, in the case at hand, plaintiff's complaint is not derived from the substance of the ESOP, nor is plaintiff's complaint concerned with the regulation of the plan. The substance and regulation of the ESOP are only tangential and incidental to plaintiff's claim of fraud. See *Golen*, 139 Ill. App. 3d at 58, 487 N.E.2d at 125. As in *Golen*, plaintiff's complaint is about the inducement of a potential employee and not about the management of the plan. Furthermore, this suit is against defendants in their capacity as employers. *Cf. Lister v. Stark*, 890 F.2d 941 (7th Cir. 1989).

Defendants point out that, unlike the case at hand, *Golen* involved a written agreement. The existence of written documents in *Golen* was irrelevant to the analysis of preemption. The question of whether any agreement was in writing was not mentioned in *Golen*'s discussion of preemption. The modification of an ERISA plan, oral or otherwise, was not at issue in *Golen* or the case at hand. The question here is whether plaintiff was induced by a fraudulent misrepresentation.

## II

■ The second issue raised on appeal is whether plaintiff supported a claim for fraudulent misrepresentation. Illinois recognizes fraudulent misrepresentation as a form of common law fraud. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 703, 767 N.E.2d 376, 381 (2002); *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 648, 762 N.E.2d 1, 6-7 (2001). In order to succeed on a claim of fraudulent misrepresentation, a plaintiff must prove the following: (1) a false statement of material fact, (2) knowledge or belief of the falsity on behalf of the party making the statement, (3) an intention to induce the other party to act, (4) action by the plaintiff in reliance on the truth of the statement, and (5) damage to the plaintiff resulting from that reliance. *Schrager*, 328 Ill. App. 3d at 703, 767 N.E.2d at 381-82

(relying on *Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*, 295 Ill. App. 3d 567, 571, 692 N.E.2d 812, 815 (1998)); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996). Furthermore, the plaintiff's reliance must be justifiable to sustain the cause of action. *Neptuno*, 295 Ill. App. 3d at 571, 692 N.E.2d at 815.

A plaintiff must prove the elements of fraudulent misrepresentation by clear and convincing evidence. *Niemoth v. Kohls*, 171 Ill. App. 3d 54, 68, 524 N.E.2d 1085, 1094 (1988). Nonetheless, clear and convincing proof is not needed to survive a summary judgment. "The purpose of summary judgment is *** to determine whether a triable issue of fact exists." *Luu v. Kim*, 323 Ill. App. 3d 946, 952, 752 N.E.2d 547, 552 (2001). A plaintiff need not prove his case to survive a summary judgment, but he must present some factual basis that would support his claim. *Schrager*, 328 Ill. App. 3d at 708, 767 N.E.2d at 385. The record reveals genuine issues of material fact that preclude a summary judgment.

On appeal, defendants contend that a summary judgment was proper because of a lack of justifiable reliance. They point out that plaintiff was an employee at will and never had his purported arrangement reduced to writing. Defendants assert that any reliance was unjustified because plaintiff failed to inform himself of the terms of the plan and ignored documents governing his participation in the plan.

In order to sufficiently plead fraudulent misrepresentation, a plaintiff must allege sufficient facts to show justifiable reliance. *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 125, 648 N.E.2d 226, 232 (1995). Justifiable reliance has been characterized as a plaintiff's burden to prove his right to rely upon the statement. *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 114 Ill. 2d 278, 288, 499 N.E.2d 1319, 1323 (1986). Whether reliance is justified is a question of fact that must be viewed in light of the surrounding circumstances. *Schrager*, 328 Ill. App. 3d at 710, 767 N.E.2d at 387; *Sims v. Tezak*, 296 Ill. App. 3d 503, 511, 694 N.E.2d 1015, 1020 (1998). The question of justifiable reliance takes into account both what the plaintiff knew and what he could have learned through the exercise of ordinary prudence. *Soules v. General Motors Corp.*, 79 Ill. 2d 282, 286, 402 N.E.2d 599, 601 (1980); *Central States Joint Board v. Continental Assurance Co.*, 117 Ill. App. 3d 600, 606-07, 453 N.E.2d 932, 936 (1983). In other words, a plaintiff may not close his eyes and then claim that he has been deceived by others. *Central States Joint Board*, 117 Ill. App. 3d at 606, 453 N.E.2d at 936; *Adler*, 271 Ill. App. 3d at 125-26, 648 N.E.2d at 232.

Again, we turn to *Golen*. Defendants point out that the existence of written agreements was relevant to the issue of liability in *Golen*. In *Golen*, after starting his employment with the defendant, the plaintiff sent two letters reminding the defendant's president of the offer of pension credits. The president signed and returned the letters. *Golen* found that the trial court had properly entered a summary judgment for the plaintiff because there was no genuine issue of material fact regarding the offer of pension credits.

*Golen* suggests that a summary judgment was inappropriate in the case at hand. Contrary to defendants' claim, *Golen* does not stand for the proposition that an inducement for employment must be placed in writing. The letters were significant as evidence of the employee's allegations and justified a summary judgment, but *Golen* does not indicate that the employee's claim would have been unsupportable without written documents. Indeed, in *Golen*, the letters were sent after the employee had left his former job and started working for the defendant. Furthermore, *Golen* does not mandate that an employee at will cannot claim fraudulent misrepresentation regarding the inducement of employment. *Golen* does not discuss whether the employee could have been terminated at will, and that question is irrelevant to the issue of the inducement an employee receives to accept employment. In light of *Golen*, a genuine issue of material fact exists regarding defendants' liability for fraudulent misrepresentation.

■ Plaintiff presents a genuine issue regarding whether he justifiably relied on statements made by Smith. Plaintiff presented evidence that he believed a false statement Smith made with the intention to induce plaintiff to change employment. Plaintiff also presented evidence of a prudent investigation. He presented an affidavit from Smith that an agreement had been reached to grandfather in the employees for purposes of both vesting and service. Plaintiff attested that he spoke with Patterson and McClendon about Smith's offer. The record leaves open a genuine issue of material fact regarding whether plaintiff exercised ordinary prudence and his reliance was justified.

In this case, a reasonable trier of fact could find that defendants issued misrepresentations designed to induce plaintiff to change his employment. The same trier of fact could also find that plaintiff conducted a prudent investigation and that plaintiff's reliance on Smith's statements was justified. On appeal, defendants also raise issues regarding the viability of the count for promissory estoppel that were not addressed in the summary judgment. The circuit court dismissed the entirety of plaintiff's complaint for a lack of justifiable reliance. This court concludes that whether plaintiff's reliance on Smith's statements was justified is a genuine issue of material fact unresolved by the record.

## CONCLUSION

Accordingly, the order of the circuit court of Alexander County entering a summary judgment in favor of defendants is hereby reversed, and the matter is remanded for further proceedings not inconsistent with this opinion.

Reversed; cause remanded.

WEXSTTEN, P.J., and CHAPMAN, J., concur.