No. 2--06--0671          Filed:  6-25-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| OTTAWA SAVINGS BANK, | ) | Appeal from the Circuit |
| | ) | Court of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--MR--391 |
| | ) | |
| JDI LOANS, INC.; JDI JOLIET, LLC, d/b/a | ) | |
| JDI Loans, Inc.; JEFFREY AEDER; | ) | |
| KEVIN CONNOR; and DAVID RATTNER, | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| (Flower Bank, FSB, f/k/a Umbrella Bank, FSB; | ) | Honorable |
| West Town Savings Bank; and Lincoln State | ) | Bonnie M. Wheaton, |
| Bank, Plaintiffs). | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

On April 4, 2005, plaintiffs, Ottawa Savings Bank (Ottawa); Flower Bank, FSB, f/k/a Umbrella Bank, FSB; West Town Savings Bank; and Lincoln State Bank, brought an action to recover compensatory and punitive damages against defendants, JDI Loans, Inc.; JDI Joliet, LLC, d/b/a JDI Loans, Inc.; Jeffrey Aeder; Kevin Connor; and David Rattner (collectively, defendants), for losses allegedly sustained from the improper sale of a portfolio of loans by Commercial Loan Corporation (CLC) to JDI Loans, Inc.  In the complaint, plaintiffs alleged causes of action against defendants for conversion (count I), turnover of property (count II), imposition of trust (count III), unjust enrichment (count IV), an accounting (count V), temporary, preliminary, and permanent

injunctive relief (count VI), and declaratory relief (count VII). The trial court granted defendants' motion to dismiss pursuant to section 2--615 of the Code of Civil Procedure (735 ILCS 5/2--615 (West 2004)), with leave to amend. Plaintiffs subsequently filed an amended complaint alleging causes of action for tortious interference with existing business relationships (count I), tortious interference with contract (count II), recovery of the loan proceeds pursuant to section 3--306 of the Uniform Commercial Code (UCC) (810 ILCS 5/3--306 (West 2004)) (count III), an accounting (count IV), and declaratory relief (count V). The trial court also dismissed the amended complaint, with leave to amend. Thereafter, plaintiffs Flower Bank, West Town Savings Bank, and Lincoln State Bank voluntarily dismissed themselves from the action. Ottawa then filed a second-amended complaint against defendants, asserting only a single cause of action, for inducement of breach of fiduciary duty. The trial court again granted defendants' section 2--615 motion to dismiss, this time with prejudice. Ottawa appeals, claiming that the trial court erred in dismissing its second-amended complaint and in dismissing its original and first-amended complaints. For the reasons that follow, we affirm.

## BACKGROUND

On April 4, 2005, Ottawa brought its original complaint against defendants, alleging conversion, turnover of property, imposition of trust, and unjust enrichment, and seeking an accounting, temporary, preliminary, and permanent injunctive relief, and declaratory relief. The claims were based on Ottawa's and the other plaintiffs' relationships with CLC. CLC was primarily engaged in the business of extending, making, and servicing to third parties business loans that were secured by real estate and personal property. CLC sold to various banks, including plaintiffs, participation interests in most of these loans.

The original and amended complaints alleged essentially the same facts. In March 2004, JDI Loans, Inc. (JDI) purchased a portfolio of seven loans from CLC pursuant to a mortgage loan sale and servicing agreement (the JDI agreement). Under the agreement, JDI paid more than $3.2 million to CLC for the loans. In return, CLC agreed to "sell, assign, transfer and convey unto [JDI] *** all of [CLC's] right, title and interest in and to the Loans." The agreement further provided that the "ownership of each Loan *** shall be vested in [JDI]," and identified JDI as "the owner of the Loan(s)." CLC transferred, and JDI received, a 100% ownership interest in the loans. In return, JDI obtained the original notes from CLC.

Prior to the sale, CLC had entered into participation agreements with various lenders, including Ottawa and the other plaintiffs, whereby some portion of CLC's loan portfolio, including the JDI loans, were funded. Those participation agreements required CLC to repay the participants their investment if the loans were ever sold or repaid. CLC failed to satisfy its obligations to Ottawa under the participation agreement when CLC diverted the $3.2 million paid to it by JDI. Included in that amount was the balance due for Ottawa's portion of the loan portfolio, in the aggregate amount of over $2 million.

According to the terms and conditions of the participation agreements, CLC did not retain any ownership interest in the participation loans. However, CLC held legal title to the participation loans as trustee for the participants. CLC, as trustee, could not assign or transfer legal title to participation loans. The participants were considered the beneficial owners of the participation loans. CLC filed bankruptcy in May 2004 and is now out of business. A Chapter 11 bankruptcy trustee was appointed immediately after the commencement of the CLC bankruptcy case, primarily based upon CLC's pre-bankruptcy fraud and mismanagement of its entire loan portfolio.

JDI was an active participant in the CLC bankruptcy case and JDI Joliet filed a proof of claim in the case in an unstated amount. In this proof of claim, JDI Joliet affirmatively stated that it did business as JDI Loans, Inc.

Ottawa alleged that, prior to the closing of the JDI agreement, JDI was informed that CLC had previously sold participation interests in the loan portfolio. CLC also provided JDI with a copy of the participation agreement form that was used in conjunction with the loan portfolio. In light of this information, JDI requested that the participation interests in the loan portfolio be paid in full from the proceeds being paid by JDI at the closing of the JDI agreement. Specifically, JDI requested payoff letters from the participants, which included Ottawa, and confirmation that the participants would be paid in full from the proceeds that JDI was tendering to CLC at closing. CLC refused to comply with JDI's request.

Ottawa further alleged that, upon such refusal by CLC, JDI then requested that CLC's counsel act as an escrow agent of the proceeds that JDI was tendering to CLC pursuant to the JDI agreement. JDI also requested that CLC's counsel assume the additional responsibility of forwarding payment in full to the participants from the proceeds JDI was paying to CLC. CLC and its counsel refused to comply with JDI's request.

Ottawa alleged that JDI next requested that CLC and its counsel provide a side letter agreement to JDI insuring that the proceeds JDI was tendering to CLC at closing pursuant to the JDI agreement would be used to pay the participants in full for the balances due to them. CLC and its counsel refused to enter into such an agreement.

Ottawa alleged that, despite these refusals by CLC and its counsel and with knowledge and notice that CLC had previously sold participation interests in the loan portfolio and thus had

fiduciary duties to the participants, JDI proceeded to close the JDI agreement. CLC never paid from the proceeds paid by JDI the balance due to Ottawa for its portion of the loan portfolio.

As of the closing of the JDI agreement, Ottawa asserted that defendants had taken possession of and asserted ownership rights in and to the loan portfolio, to the unlawful exclusion of Ottawa. Ottawa asserted that, based on defendants' knowledge and notice of the preexisting ownership rights in and to the loan portfolio and CLC's fiduciary duties to the participants, defendants purchased the loan portfolio subject to any and all claims and defenses of Ottawa. As a result of defendant' actions, Ottawa and the other plaintiffs filed suit on April 4, 2005, claiming that they were deprived of their property; namely, their portions of the loan portfolio and interests paid thereon.

At the time of the execution of the JDI agreement and at all other relevant times, JDI was a dissolved corporation. Aeder and Connor were officers, directors, and shareholders of JDI, and Rattner was an officer. Ottawa alleged that at all relevant times prior to the closing of the JDI agreement, defendants knew of CLC's fiduciary obligations to the participants in the loan portfolio being acquired by JDI from CLC. Ottawa further asserted that, as of the closing of the JDI agreement, defendants took possession of and asserted ownership rights in and to Ottawa's portion of the loan portfolio.

Ottawa alleged that, as of October 5, 2005, and as announced by defendants' counsel in open court, JDI was paid all amounts due from the underlying third-party borrowers under the participation loans, inclusive of principal and interest. As a result, JDI received in excess of $3.5 million for the loans it acquired from CLC for merely $3.2 million. Ottawa claimed that, as a result of defendants' actions, it has been deprived of its property; namely, Ottawa's portion of the loan portfolio and the monies collected and derived therefrom.

We note that, on November 1, 2006, Peter Heuser, the president of CLC, was sentenced to imprisonment for bank fraud he engaged in through CLC. A judgment was also entered against him for $18.5 million, representing the amount he converted that was otherwise due a number of participating banks, including Ottawa.

Responding to plaintiffs' original complaint, defendants filed a motion to dismiss pursuant to section 2--615. Defendants argued in general that they never owed Ottawa or the other plaintiffs any duty under any agreement. Defendants argued that a participating bank can look only to its lead bank, which in this case was CLC, for satisfaction of claims arising out of a transaction and that a participating bank is not a creditor of a borrower and so cannot assert creditor claims against the borrower. Alternatively, defendants argued that none of the claims alleged by plaintiffs were properly pled. The trial court agreed and dismissed plaintiffs' complaint but granted them leave to amend.

Plaintiffs filed an amended complaint realleging the same facts and the counts for an accounting and declaratory relief and alleging three new counts, for tortious interference with existing business relationships, tortious interference with contract, and for proceeds pursuant to section 3--306 of the UCC (810 ILCS 5/3--306 (West 2004)).

Defendants moved to dismiss plaintiffs' amended complaint, again invoking the argument that they never owed plaintiffs any duty under any agreement. Defendants additionally argued that the new claims had not been properly pled. The trial court agreed and dismissed plaintiffs' amended complaint, again granting plaintiffs leave to amend.

After the other plaintiffs voluntarily dismissed themselves, Ottawa filed its second-amended complaint, alleging the same facts as in the previous complaints but alleging only one count, for inducement of breach of fiduciary duty. Defendants filed a section 2--615 motion to dismiss

Ottawa's second-amended complaint, raising the same arguments as before. This time the trial court granted defendants' motion with prejudice.

ANALYSIS

Ottawa purports to appeal not only from the trial court's final order dismissing with prejudice its second-amended complaint but also from the previous orders dismissing the original and first-amended complaints. Defendants contend that Ottawa has waived all but its claim for inducement of breach of fiduciary duty, because in the second-amended complaint Ottawa did not refer to or adopt the claims from the original and the first-amended complaints. We agree.

"A plaintiff desiring to preserve for appeal the previous dismissal of claims either must stand on the dismissed counts and challenge the ruling at the appellate level or reallege or incorporate the dismissed counts in subsequent complaints." Abrams v. Watchtower Bible & Tract Society of New York, Inc., 306 Ill. App. 3d 1006, 1014 (1999); see Boatmen's National Bank of Belleville v. Direct Lines, Inc., 167 Ill. 2d 88, 99 (1995); Doe v. Roe, 289 Ill. App. 3d 116, 120 (1997). A party who files an amended complaint waives any objection to the trial court's ruling on the former complaint. Boatmen's National Bank, 167 Ill. 2d at 99. Where an amended pleading is complete and does not refer to or adopt the prior complaint, the earlier complaint ceases to be a part of the record, being in effect abandoned and withdrawn. Pfaff v. Chrysler Corp., 155 Ill. 2d 35, 61 (1992); Funes v. B&B Equipment, Inc., 282 Ill. App. 3d 272, 274-75 (1996). Once an amended pleading has been filed, allegations of error in dismissing a prior pleading are waived. Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp., 96 Ill. 2d 150, 153 (1983).

In this case, Ottawa abandoned and withdrew the original complaint's claims of conversion, turnover of property, imposition of trust, unjust enrichment, and temporary, preliminary, and permanent injunctive relief when it failed to reallege or incorporate those claims in its first-amended

complaint. Likewise, Ottawa abandoned the first-amended complaint's claims for tortious interference with existing business relationships, tortious interference with contract, proceeds pursuant to section 3--306 of the UCC (810 ILCS 5/3--306 (West 2004)), an accounting, and declaratory relief when it failed to reallege or incorporate those claims in its second-amended complaint.

Ottawa argues that the interpretation of the Foxcroft rule is "ill conceived, illogical and in conflict with more compelling state law and should not be applied." While the Seventh Circuit Court of Appeals has made it clear that a litigant in federal court need not replead dismissed claims to preserve them for appeal, the Foxcroft rule is a creature of state law that has yet to be overturned. See Bastian v. Petren Resources Corp., 892 F.2d 680, 682-83 (7th Cir. 1990); see also Smith v. National Health Care Services of Peoria, 934 F.2d 95, 98 (7th Cir. 1991) ("This court in Bastian stated that dismissed claims need not be included in an amended complaint, because the final judgment brings up all previous rulings in the case"). The import of Foxcroft is that Ottawa had alternatives to preserve the counts at issue for appellate review. First, it could have elected to stand on the original or the first-amended complaint, without filing its second-amended complaint. Alternatively, it could have preserved the claims in the original and first-amended complaints by realleging them in the second-amended complaint.

We note that, in response to defendants' motion to dismiss the first-amended complaint, Ottawa admitted that it abandoned the original complaint's claims for conversion, turnover, constructive trust, and unjust enrichment. Similarly, by failing to preserve any claims from the original and first-amended complaints so as to avoid the consequences of the Foxcroft rule, Ottawa has waived this court's consideration of the trial court's dismissal of all of its claims save for the only claim raised in the second-amended complaint: inducement of breach of fiduciary duty.

Accordingly, we now address whether the trial court properly granted defendants' section 2--615 motion to dismiss Ottawa's claim for inducement of breach of fiduciary duty.

A motion brought pursuant to section 2--615 (735 ILCS 5/2--615 (West 2004)) attacks the legal sufficiency of the complaint. Abbasi v. Paraskevoulakos, 187 Ill. 2d 386, 391 (1999). It must be determined whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. Abbasi, 187 Ill. 2d at 391. A section 2--615 motion admits as true all well-pleaded facts, but not conclusions of law or factual conclusions that are unsupported by allegations of specific facts. Lagen v. Balcor Co., 274 Ill. App. 3d 11, 16 (1995). Orders granting or denying such motions are subject to de novo review. Abrams, 306 Ill. App. 3d at 1010.

Case law holds that in order to plead a cause of action for inducement of breach of fiduciary duty, a plaintiff must allege that a third party: (1) colluded with the fiduciary in committing a breach of duty; (2) induced or participated in such breach; and (3) obtained the benefits resulting from the breach of duty. See, e.g., Paul H. Schwendener, Inc. v. Jupiter Electric Co., 358 Ill. App. 3d 65, 74 (2005). Ottawa contends that it is attacking the sale to defendants of the underlying loans and that its claim against defendants is for the improper transfer of the loans from CLC to defendants when defendants knew that CLC had no ability or right to transfer the loans. However, Ottawa's claim for inducement of breach of fiduciary duty must be based on its participation loans with CLC and its assumption that JDI owed Ottawa some legal duty or obligation by virtue of its participation agreement with CLC. Thus, we must determine whether Ottawa, as a participant bank, has a right of action under the participation agreement against anyone other than CLC. An overview of participation loans will lend an understanding to whether there is a foundation to Ottawa's claim for inducement of breach of fiduciary duty.

A participation is an undertaking by one financial institution, usually called the "lead bank," to divide a loan that it has or will put on its books into shares, which it then offers for sale to other "participant" financial institutions. First National Bank of Belleville v. Clay-Hensley Comm'n Co., 170 Ill. App. 3d 898, 901-02 (1988). Participants, like Ottawa, can look only to their lead bank, which in this case was CLC, for satisfaction of claims arising out of the transaction; they are not themselves creditors of the borrower and cannot assert claims against the borrower. Bank of Chicago v. Park National Bank, 266 Ill. App. 3d 890, 899 (1994); see In re Okura & Co. (America), Inc., 249 B.R. 596, 608 (S.D.N.Y. 2000) (courts are in agreement that a participation does not allow the participant to assert claims against the borrower); First National Bank of Louisville v. Continental Illinois National Bank & Trust Co. of Chicago, 933 F.2d 466, 467 (7th Cir. 1991) ("only the lead bank has a direct contractual relationship with the borrower"); Federal Deposit Insurance Corp. v. Adams, 187 Ariz. 585, 594, 931 P.2d 1095, 1104 (App. 1996) (holding that the participant cannot sue the borrower to enforce the loan agreement, because it has no legal relationship to the borrower).

In First National Bank of Belleville, a case similar to the present case, a participating bank brought suit against third parties for conversion of collateral that secured the loan issued by the lead bank. First National Bank of Belleville, 170 Ill. App. 3d at 900. The court held that, because a participating bank can maintain a cause of action against only the lead bank, the participating bank did not have an interest in the collateral securing the loan sufficient to permit it to maintain a direct action against the alleged converters. First National Bank of Belleville, 170 Ill. App. 3d at 906. The court explained that " '[t]he participants can look only to their lead [bank] for satisfaction of claims arising out of the transaction; they are not themselves creditors of the borrower and so cannot assert creditor claims against the borrower.' " First National Bank of Belleville, 170 Ill. App. 3d at 904,

quoting A. Armstrong, The Developing Law of Participation Agreements, 23 Bus. Law. 689, 693 (1968).

In this case, the participation agreement states that CLC sold to Ottawa "an undivided interest in *** the right to receive its share *** of all collections with respect to the Note(s)." The master participation agreements reflect that, in selling various participation interests to plaintiffs, CLC was not transferring any legal ownership interests in the loans. Instead, plaintiffs were merely "deemed to be holders of an equitable interest in the Loan *** [and CLC] may deal with the Loan *** as though the absolute legal and equitable owner thereof." CLC thus retained legal title to the loans.

Participation interests arise out of agreements between lead banks and participants. In this case, Ottawa never alleged that JDI was a party to any of these agreements. As the trial court noted, JDI was never provided with any contracts CLC entered into, and Ottawa did not maintain a recorded security interest on the loans such that JDI would have been put on notice of a legal claim. Nor was there a single allegation that JDI knew that Heuser did not intend to pay to Ottawa the balance it was due from the $3.2 million CLC received from JDI. The fact remains, without a duty that runs from defendants to Ottawa and a breach of that duty, we fail to see how Ottawa can sustain a legal cause of action for inducement of breach of fiduciary duty.

Moreover, even if there were a duty, Ottawa made no specific allegations of collusion or that defendants did anything to induce CLC to breach its fiduciary duty to Ottawa. Nor were there any specific allegations that any breach by CLC of a duty to Ottawa was caused by defendants' conduct. Ottawa did not plead that defendants knew who Ottawa was, knew the contents, terms, or conditions of Ottawa's contract or relationship with CLC, or caused or induced CLC to breach any obligation to Ottawa.

Ottawa cannot allege that defendants "induced or participated" in such a breach and obtained the benefits from the breach. We fail to see how defendants could have induced or participated in the breach of CLC's fiduciary duty to Ottawa when defendants neither knew of that duty nor saw the contract that created the duty. Had CLC been an honest loan broker, it would have taken JDI's $3.2 million and repaid the participating banks what they were owed. The decision to breach the fiduciary duty that required CLC to pay the money that it owed to Ottawa was only CLC's decision.

As explained by defendants, JDI paid $3.2 million for the loan portfolio with an approximate face value of $3.5 million. JDI bought a loan portfolio and "reaped" nothing at the time of closing. It obtained the right to collect principal and interest on seven loans. If any one of those loans went into default, or the value of the collateral diminished, JDI, like any other lender, would be at risk of not collecting its money. The "benefit" obtained by JDI was paid for. It did not steal or convert the money. JDI wrote a check for $3.2 million to CLC, which was substantially more than Ottawa was owed at the time. The fact that CLC chose not to pay Ottawa is a matter between Ottawa and CLC.

Ottawa contends that, "by closing the transactions set forth in the JDI agreement with the prior notice and knowledge described above, the Defendants intentionally and unjustifiably induced a breach of the participation agreements existing between CLC and the Plaintiff." However, as stated, Ottawa fails to allege how or in what manner the mere purchase of several loans induced CLC not to pay Ottawa the amount Ottawa was due. As defendants aptly assert, "[o]ther than putting money in the hands of a person no one knew was acting illegally (until the house of cards collapsed) how exactly did JDI induce Mr. Heuser to steal?" In sum, because defendants were not privy to any contracts entered into between Ottawa and CLC, Ottawa will never be able to allege that defendants induced the breach of a fiduciary duty.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GILLERAN JOHNSON and ZENOFF, JJ., concur.