No. 2—10—0036
Opinion filed March 10, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PAULA BONHOMME, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 08—L—317 |
| | ) | |
| | ) | |
| JANNA ST. JAMES, | ) | Honorable |
| | ) | Robert B. Spence, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Hutchinson concurred in the judgment and opinion.
Justice Schostok concurred in part and dissented in part, with opinion.

**OPINION**

Plaintiff, Paula Bonhomme, appeals from the orders of the trial court dismissing with prejudice her second and third amended complaints. We affirm in part, reverse in part, and remand for further proceedings.

The following facts were alleged in plaintiff's third amended complaint. In April 2005, plaintiff, a resident of Los Angeles, California, began on-line conversations with defendant, Janna St. James, on the "Deadwood Boards," an Internet chatroom dedicated to the HBO television series "Deadwood." Defendant, a resident of Batavia, Illinois, had registered as a user of the site under the name "Ms. Magnolia." In June, defendant registered again, posing as a man named Jesse James and

under the user name of "Auboy." "Jesse" began chatting with and e-mailing plaintiff in July 2005. Defendant, in her own name, also began e-mailing plaintiff in July. Defendant represented to plaintiff that she knew "Jesse" and many of the people in "Jesse's" life.

Plaintiff and "Jesse" began an on-line romantic relationship that lasted until July 2006. In addition to e-mails, "Jesse" and plaintiff exchanged personal photos, handwritten letters, and gifts. They even spoke regularly on the telephone; plaintiff alleged that defendant used a voice-altering device to disguise her female voice. Defendant, under her own name, also maintained a relationship with plaintiff during this period. In addition, defendant created a universe of approximately 20 fictional on-line characters involved with "Jesse," including an ex-wife, a son, various family members, a therapist, and friends living in the United States and abroad. These characters communicated with plaintiff from separate and distinct e-mail accounts and even sent photos, handwritten mail, and packages from different states and foreign countries. Plaintiff sent gifts worth over $10,000 to defendant, "Jesse," and various other characters.

Plaintiff purchased round-trip airline tickets from Burbank, California, to Denver, Colorado, in September 2005 to meet "Jesse" in person. However, "Jesse" cancelled the plans. Shortly thereafter, defendant communicated to plaintiff that "Jesse" had attempted suicide. This caused plaintiff "great emotional distress," and plaintiff began seeing a therapist, with bills totaling more than $5,000.

"Jesse" and plaintiff continued their relationship and, in April 2006, decided to move in together in "Jesse's" Colorado home. Plaintiff spent approximately $700 preparing for the anticipated July move. However, in July, plaintiff was informed by "Jesse's" sister "Alice" that "Jesse" had died of liver cancer. Defendant, posing as the other fictional characters, sent plaintiff

letters of condolence. Plaintiff entered a deep depression, experiencing headaches, exhaustion, inability to sleep, and inability to focus on job-related tasks. She also contracted a recurring infection known as MRSA (multidrug resistant staphylococcus aureus) because her immune system was so weakened.

Even after "Jesse's" death, defendant stayed in touch with plaintiff, communicating with her on a daily basis for the next seven months. Plaintiff met defendant in Colorado to see some of "Jesse's" favorite places, then drove to New Mexico to visit other "Jesse"-related sites. During that trip, defendant gave plaintiff a letter that "Jesse" had written in which he professed his love for plaintiff and set out his "dying wishes."

In February 2007, defendant visited plaintiff in California. Plaintiff spent $1,000 preparing her home for defendant, buying an inflatable bed and linens and installing a handrail and sliding chair, along with other "medical bath assist devices" in her bathroom. During this trip, some of plaintiff's actual friends discovered the fictional nature of the universe of people that defendant had created, and they confronted defendant. Defendant admitted on videotape that she had put plaintiff through an "emotional ringer [*sic*]" for "maybe a year and a half." Plaintiff continued to see a therapist to deal with the emotional aftermath of the false statements regarding the existence of the fictional characters, and her therapy bills continued to accumulate. Her "affected mental state" also had resulted in lost earnings.

Plaintiff filed a five-count complaint against defendant in February 2008. Her second amended complaint contained seven counts, including both intentional and negligent infliction of emotional distress, defamation *per se* and *per quod*, negligent defamation, fraudulent misrepresentation, and false light. The trial court granted defendant's motion to dismiss brought

pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 2008)) and dismissed with prejudice all counts except count VI, fraudulent misrepresentation, which was dismissed without prejudice.  Plaintiff filed a motion to reconsider, which the trial court denied on August 19, 2009.

Plaintiff then filed a motion requesting either a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2006) or, alternatively, an order certifying four questions of law pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 1, 1994).  On the same day, plaintiff filed a notice of appeal from the trial court's denial of her motion to reconsider.  Plaintiff noted that, while the trial court had not yet ruled on her motion for a Rule 304(a) finding or Rule 308 certification, she was submitting the notice "to apprise the Courts of the procedural posture of this case."[1]  On September 15, 2009, the trial court denied plaintiff's motion, and plaintiff filed a third amended complaint, alleging one count of fraudulent misrepresentation.  The trial court granted defendant's section 2—615 motion to dismiss and dismissed the third amended complaint with prejudice on December 22, 2009.  This appeal followed.

Although no one has raised or addressed the issue, we must first note that plaintiff has abandoned her claims in her second amended complaint.  To preserve for appeal the dismissal of claims, a plaintiff must either stand on the dismissed counts and challenge the ruling in the appellate court or reallege or incorporate the dismissed counts in a subsequent complaint.  *Ottawa Savings Bank v. JDI Loans, Inc.*, 374 Ill. App. 3d 394, 399 (2007).  A simple footnote or paragraph in the amended pleading, notifying the court and the defendant that the plaintiff is preserving the dismissed portions of the former complaint for appeal, is sufficient.  *Childs v. Pinnacle Health Care, LLC,* 399

---

[1]Plaintiff subsequently withdrew this notice of appeal on October 1, 2009.

Ill. App. 3d 167, 176 (2010). A party who files an amended complaint without so incorporating or realleging the prior complaint forfeits any objection to the trial court's ruling on the prior complaint. *Ottawa Savings Bank*, 374 Ill. App. 3d at 400. Here, plaintiff filed a notice of appeal before the trial court had ruled on her motion for a finding or certification. Once that motion was denied, plaintiff filed her third amended complaint without any mention of intent to preserve the dismissed portions of her second amended complaint and withdrew her notice of appeal. Thus, plaintiff failed to preserve the dismissal of counts I, II, III, IV, V, and VII of her second amended complaint, and she has abandoned them for purposes of appeal.

Plaintiff's only viable contention, then, is that the trial court erred in dismissing count I of her third amended complaint. The trial court ordered the dismissal pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2008)). A complaint should be dismissed under section 2—615 for failure to state a cause of action only when it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief. *Kinn v. Prairie Farms/Muller Pinehurst*, 368 Ill. App. 3d 728, 732 (2006). In reviewing the sufficiency of a complaint, this court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Raleigh v. Alcon Laboratories, Inc.*, 403 Ill. App. 3d 863, 868 (2010). This court must construe the allegations in the complaint in the light most favorable to the plaintiff. See *Weidner v. Karlin*, 402 Ill. App. 3d 1084, 1086 (2010). We review *de novo* a trial court's dismissal of a complaint pursuant to section 2—615. *Kinn*, 368 Ill. App. 3d at 732.

Count I of plaintiff's third amended complaint sought actual, special, compensatory, and punitive damages for fraudulent misrepresentation. The elements of a claim of fraudulent misrepresentation are: (1) a false statement of material fact; (2) knowledge or belief of the falsity by

the party making it; (3) intention to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from that reliance. *Doe v. Dilling*, 228 Ill. 2d 324, 342-43 (2008). A plaintiff must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made them, and to whom they were made. *Weidner*, 402 Ill. App. 3d at 1087. In this regard, we believe that the complaint has adequately pleaded a course of conduct of continuing fraudulent misrepresentations.

The origin of the tort of fraudulent misrepresentation lies in the common-law action of deceit, "a very narrow tort that applied only to cases involving business or financial transactions between parties." *Doe*, 228 Ill. 2d at 343. Fraudulent misrepresentation has been "historically treated as purely an economic tort under which one may only recover damages for pecuniary harm." *Doe*, 228 Ill. 2d at 343. This court has previously declined "to extend the tort of fraudulent misrepresentation to encompass noncommercial and nonfinancial dealings between parties." *Neurosurgery & Spine Surgery v. Goldman, S.C.*, 339 Ill. App. 3d 177, 187 (2003). However, since then, our supreme court has acknowledged that there have been limited occasions in which this cause of action has been held to lie for personal injuries. See *Doe*, 228 Ill. 2d at 344 (citing W. Page Keeton *et al.*, Prosser & Keeton on Torts §105, at 726 (5th ed. 1984)). Keeton, in fact, stated:

> "There is no essential reason to prevent a deceit action from being maintained, for intentional misstatements at least, where other types of interests are invaded; and there are a few cases in which it has been held to lie for personal injuries, for tricking the plaintiff into an invalid marriage or marriage with one who is physically unfit, or for inducing the plaintiff to leave

a husband, or to incur criminal penalties." W. Page Keeton *et al.*, Prosser & Keeton on Torts §105, at 726 (5th ed. 1984).

Even so, Keeton described the "typical case" as "one in which the plaintiff has parted with money, or property of value, in reliance upon the defendant's representation." W. Page Keeton *et al.*, Prosser & Keeton on Torts §105, at 726-27 (5th ed. 1984).

*Doe* also acknowledged, but distinguished, both Illinois and out-of-state cases that have extended the tort of fraudulent misrepresentation to noncommercial situations. In both *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119 (2003), and *Roe v. Catholic Charities of the Diocese of Springfield, Illinois*, 225 Ill. App. 3d 519 (1992), the appellate court found a cause of action for fraudulent misrepresentation in the adoption setting where adoption agencies made intentional misrepresentations regarding a child's health and psychological background. *Doe* found those cases to be "animated by the unique facts presented by adoption proceedings, wherein there is an inherent duty on the part of [an] agency to provide full and complete disclosure of the adopted child's background and history—information that is held exclusively by the agency." *Doe*, 228 Ill. 2d at 348. The court also recognized decisions rendered in several other states that recognized a cause of action for fraudulent misrepresentation for the transmission of sexually transmitted diseases; those decisions were distinguished factually because *Doe* involved misrepresentations made by the parents of a competent HIV-infected adult tortfeasor, not, as in the other cases, misrepresentations made by the person who actually communicated the disease. *Doe*, 228 Ill. 2d at 348-50. Thus, the court found that it was "inappropriate to expand the tort of fraudulent misrepresentation to the facts of plaintiff's case." *Doe*, 228 Ill. 2d at 351.

It is clear, then, that while the "typical case" of fraudulent misrepresentation arises in a commercial context, our supreme court has acknowledged that this tort may, in the appropriate circumstances, be expanded to cover areas outside of the commercial context. We conclude that this is an appropriate circumstance in which to expand the application of fraudulent misrepresentation. We first note that this case is "one in which the plaintiff has parted with money, or property of value, in reliance upon the defendant's representation" (W. Page Keeton *et al.*, Prosser & Keeton on Torts §105, at 726-27 (5th ed. 1984)), so it is not, all at once, an expansion of the tort into "purely personal settings." See *Doe*, 228 Ill. 2d at 348. Plaintiff clearly pleaded that she spent over $10,000 on gifts, some of which were for defendant, but some of which were for "Jesse" and other characters invented by defendant, and $700 for preparations for a move to live with "Jesse." Clearly, these are economic losses alleged to have resulted from defendant's misrepresentations. Plaintiff has also alleged other damages, including bills for therapy and medical expenses "to recover from Defendant's false representation regarding the fictitious characters and their activities." However, as this case involves a motion to dismiss during the pretrial stage, we need not address whether such damages could be recovered here.

Looking again to the elements of this cause of action ((1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from that reliance), we conclude that plaintiff has alleged sufficient specific facts to establish a cause of action for fraudulent misrepresentation. Plaintiff alleged that defendant posed as at least 20 fictional characters between June 2005 and April 2007, the most important of which was "Jesse," with whom plaintiff started "chatting" in the Deadwood chatroom in July 2005.

Defendant also communicated with plaintiff in her own name and represented to plaintiff that "Jesse" and the other characters were real persons she knew. Thus began an almost-two-year masquerade of false statements from defendant to plaintiff, statements that defendant obviously knew were untrue. The complaint is filled with specific dates of, and quotes from, e-mails from defendant, "Jesse," and other characters.

Defendant argues that such representations are not "false statements of material fact." Instead, she asserts, plaintiff's complaint is based:

"more on the fiction pursued by Defendant than it is on specific representations. *** The concepts of falsity and material fact do not apply in the context of fiction, because fiction does not purport to represent actuality."

However, rather than present these representations as fiction, defendant presented them as fact. Defendant has attempted to suggest that, as long as a defendant knows that the masquerade is fiction, there can be no *mis*representation. Such an argument moves the element of reliance upon the misrepresentation from the injured party to the utterer. As such, it truly *mis*places the duty not to present fiction as fact to another.

Regarding the third element of the cause of action (intention to induce the plaintiff to act), plaintiff alleged that, under the guise of the fictitious characters, defendant induced her to buy gifts, spend money on travel, spend money on her home in anticipation of defendant's visit, disclose personal information, and engage in relationships with individuals that did not exist, and that she would not have done so without defendant's false representations. Defendant argues that these allegations are insufficient to allege that defendant "intended to induce such actions on Plaintiff's part." However, it is not necessary that the defendant in a fraud action intend the consequences of

its fraud. *Jewish Children's Bureau*, 339 Ill. App. 3d at 135. A plaintiff must allege the defendant's intention to induce the plaintiff to act (*Doe*, 228 Ill. 2d at 343), not necessarily the intention to induce the specific actions that the plaintiff took. Plaintiff alleged an almost-two-year-long series of contacts, via sundry media, including the Internet, the telephone, the mail, and personal contact, and in the names of more than 20 fictitious characters in addition to defendant as herself, creating a universe that was operated by no one other than defendant. Given the unpredictability inherent in a person's reactions to such a bombardment of false information, it would be impossible to allege that defendant intended plaintiff to commit any one action, let alone all the actions that she committed in response to the massive charade. In addition, we view the allegations in the light most favorable to plaintiff (*Weidner*, 402 Ill. App. 3d at 1086) and accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts (*Raleigh*, 403 Ill. App. 3d at 868). We can, and do, reasonably infer that defendant intended such a manipulative endeavor to induce some action on the part of plaintiff.

Defendant also argues that plaintiff failed to allege facts to show why plaintiff's reliance was justified. Justifiable reliance has been characterized as the plaintiff's burden to establish her right to rely upon a statement. *Johnson v. Waterfront Services Co.*, 391 Ill. App. 3d 985, 993 (2009). Whether the plaintiff's reliance was justified is a factual issue that must be viewed in light of the surrounding circumstances. *Johnson*, 391 Ill. App. 3d at 993. This takes into account both what the plaintiff knew and what she could have learned through the exercise of ordinary prudence. *Johnson*, 391 Ill. App. 3d at 993. A plaintiff may not close her eyes and then claim that she has been deceived by others. *Johnson*, 391 Ill. App. 3d at 993. However, a person may rely on a statement without

investigation if the party making the statement creates a false sense of security or blocks further inquiry. *Marino v. United Bank of Illinois, N.A.*, 137 Ill. App. 3d 523, 527 (1985).

Here, plaintiff alleged that she was initially befriended by defendant, a real person, who then gradually introduced plaintiff to her creations and even vouched for their reality. Defendant allegedly used various media to communicate with plaintiff while in the guise of these fictional characters, even going so far as to use a device to disguise her voice and make her sound like a man. Plaintiff was enmeshed in a web created by defendant and deceived on all sides and in numerous manners by defendant. The dissent posits that, because the "reality of the Internet age is that an online individual may not always be—and indeed frequently is not—who or what he or she purports to be," plaintiff's reliance was not justifiable. Slip op. at 12. However, we believe that there are sufficient allegations to allow the trier of fact to determine if the evidence establishes justifiable reliance in fact. Viewing the allegations in the light most favorable to plaintiff, we cannot say that she merely closed her eyes and allowed herself to be deceived. The allegations show an extensive masquerade to deceive, and reliance on the many-faceted and corroborative characters and misrepresentations can be found to be justified.

We conclude, then, that plaintiff properly pleaded a cause of action for fraudulent misrepresentation in count I of her third amended complaint, and the trial court erred in dismissing that complaint. Therefore, we reverse the trial court's December 22, 2009, order dismissing plaintiff's third amended complaint and remand the cause for further proceedings.

For these reasons, the judgment of the circuit court of Kane County dismissing plaintiff's second amended complaint is affirmed; the judgment dismissing plaintiff's third amended complaint is reversed; and the cause is remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

JUSTICE SCHOSTOK, concurring in part and dissenting in part:

I agree with the majority's determination to affirm the dismissal of the plaintiff's second amended complaint. However, I disagree with reversing the dismissal of the plaintiff's third amended complaint and would instead affirm that dismissal. It is not appropriate to expand the application of fraudulent misrepresentation to the facts in this case. Moreover, the plaintiff has not pleaded facts sufficient to establish the element of justifiable reliance.

In *Doe*, our supreme court acknowledged the decisions in *Jewish Children's Bureau* and *Catholic Charities*, but stated that those cases did not support a determination "that Illinois has recognized the tort of fraudulent misrepresentation in purely personal settings." *Doe*, 228 Ill. 2d at 348. The court noted that adoption is not a purely personal setting. Rather, adoption agencies are in the business of facilitating adoptions and they have an inherent duty to provide full and complete disclosure of an adopted child's background and history. *Id.* Moreover, the *Doe* court noted that other states have recognized a cause of action under the theory of fraudulent misrepresentation for the transmission of a sexually transmitted disease. *Id.* However, that cause of action has been based on a person's legal duty to prevent the spread of communicable disease and the interest of the state in prevention and control of dangerous diseases. *Id.* at 349-50. Under the circumstances in the present case, involving purely personal dealings between two individuals, the plaintiff has failed to show that the state has any particular policy interest at stake. This case does not involve a duty to prevent the spread of disease or any duty of disclosure. Accordingly, there is no basis on which to extend the tort of fraudulent misrepresentation to the circumstances in the present case.

Yet another reason to affirm the dismissal of the third amended complaint is that the plaintiff cannot show that she justifiably relied on the defendant's alleged misrepresentations. The reality of the Internet age is that an online individual may not always be—and indeed frequently is not—who or what he or she purports to be. The plaintiff's reliance on the defendant's alleged misrepresentations, in deciding to spend $10,000 on Christmas gifts for people who allegedly lived in another state and whom she had never met, was not justifiable. The plaintiff also cannot be said to have justifiably relied on the alleged misrepresentations in incurring expenses to move to another state to live with someone she had never met in person and who had cancelled a previous face-to-face meeting after she had purchased nonrefundable airline tickets. For the foregoing reasons, I respectfully concur in part and dissent in part.