# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*A.P. Properties, Inc. v. Rattner*, 2011 IL App (2d) 110061

---

| | |
|---|---|
| Appellate Court Caption | A.P. PROPERTIES, INC., Plaintiff-Appellant, v. MITCHELL RATTNER and MARIANN WEISS, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-11-0061 |
| Filed | October 27, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's original complaint alleging tortious interference with prospective economic advantage and its amended complaint alleging unjust enrichment were properly dismissed in an action based on plaintiff's allegations that after it purchased tax-sale certificates for tax-delinquent properties, defendants thwarted plaintiff's effort to obtain tax deeds by purchasing the properties from the owners and paying the delinquent taxes just before the redemption period expired, since plaintiff forfeited any claim that the tortious interference claim was improperly dismissed when it failed to either stand on the complaint and obtain a dismissal with prejudice or include that claim in its amended complaint, and the facts alleged in the amended complaint did not state a cause of action for unjust enrichment. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-L-111; the Hon. David M. Hall, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Thaddeus M. Bond, Jr., of Law Offices of Thaddeus M. Bond, Jr. & Associates, P.C., of Waukegan, for appellant. |
|---|---|
| | Lawrence N. Stein, of Law Offices of Lawrence N. Stein, of Chicago, for appellees. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Hutchinson and Burke concurred in the judgment and opinion. |

## OPINION

¶ 1  Plaintiff, A.P. Properties, Inc., filed a complaint against defendants, Mitchell Rattner and Mariann Weiss, for tortious interference with prospective economic advantage (tortious interference). The trial court dismissed the complaint, without prejudice, for failure to state a cause of action (see 735 ILCS 5/2-615 (West 2010)). Plaintiff then filed an amended complaint that alleged the same facts as did the original complaint but sounded in unjust enrichment. The trial court dismissed the complaint, with prejudice, for failure to state a cause of action. Plaintiff appeals, arguing that the trial court erred in (1) dismissing the original complaint; and (2) dismissing the amended complaint. We affirm.

¶ 2  Plaintiff's original complaint alleged as follows. Plaintiff has long participated in annual tax-sale auctions, at which it competes with other "tax buyers" to acquire tax-sale certificates. In a few cases, the owner does not pay the delinquent taxes, and the tax buyer obtains a tax deed to the property. Plaintiff acquires only a few such tax deeds each year despite purchasing hundreds of certificates. Defendants regularly purchase tax-delinquent properties just before the expiration of the period of redemption so that they can obtain real estate at less than fair-market value from owners who are in imminent danger of losing title.

¶ 3  The complaint continued as follows. In August 2007, defendants purchased real property in Gurnee less than 48 hours before the redemption period expired; in April 2008, defendants purchased real property in Ingleside and paid the delinquent taxes about two weeks before the redemption period expired. At the time of each purchase, plaintiff had held a tax-sale certificate to the property and had petitioned for a tax deed. Defendants' actions were the sole reason that plaintiff did not obtain a tax deed to either property. The public policy of Illinois is to protect the rights of those who purchase real estate that is sold for delinquent taxes, and the legislature has created an indemnity fund to compensate those who lose their interests in real property that is sold for delinquent taxes (see 35 ILCS 200/21-295 *et seq.* (West 2010)). The fund is supported by tax buyers such as plaintiff and benefits the public and the governmental bodies that receive revenues from the tax-sale process.

¶ 4  Plaintiff's complaint alleged that plaintiff had had valid business relationships with Lake

County and with the owners of the Gurnee and Ingleside properties; that plaintiff had had a reasonable expectancy that these relationships could provide plaintiff substantial profits on its investments; that defendants had known of these relationships and expectancies; and that defendants, instead of participating in the tax-sale process, had deprived plaintiff of the tax deeds that it otherwise would have obtained, thus interfering with plaintiff's business relationships and denying plaintiff its prospective economic advantage.

¶ 5    Defendants moved to dismiss the complaint, contending (as pertinent here) that it was legally insufficient because it failed to allege any facts to show that plaintiff had ever had a valid business relationship with either the county or a property owner. The trial court granted the motion but allowed plaintiff to file an amended complaint. Plaintiff filed an amended complaint that realleged the facts in the original complaint but sought recovery for unjust enrichment. The amended complaint did not seek recovery for tortious interference and did not refer to the original complaint. Defendants moved to dismiss the amended complaint for failing to state a cause of action. The trial court granted the motion. Defendants moved for sanctions (see Ill. S. Ct. R. 137 (eff. Feb. 1, 1994)). The trial court denied the motion. Plaintiff appealed.

¶ 6    On appeal, plaintiff argues first that the trial court erred in holding that its original complaint failed to state a claim for tortious interference. Defendants respond in part that plaintiff forfeited its claim by filing an amended complaint that did not replead the claim for tortious interference–and, indeed, did not refer to the original complaint at all. We agree with defendants.

¶ 7    The rule is well settled that "a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints." *Boatmen's National Bank of Belleville v. Direct Lines, Inc.*, 167 Ill. 2d 88, 99 (1995); see also *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153 (1983); *Bonhomme v. St. James*, 407 Ill. App. 3d 1080, 1083 (2011). To preserve review of the dismissal of the complaint, plaintiff could have stood on the complaint and obtained an order dismissing it with prejudice (see *Boatmen's National Bank*, 167 Ill. 2d at 99) or incorporated the claim for tortious interference into its amended complaint (see *Bonhomme*, 407 Ill. App. 3d at 1083). By choosing neither option, plaintiff forfeited any argument on appeal that the trial court erred in dismissing its original complaint.

¶ 8    Plaintiff contends that the forfeiture rule is inapplicable because the case never proceeded to trial and the same facts underlay both the original complaint for tortious interference and the amended complaint for unjust enrichment. However, nothing in the case law restricts the forfeiture rule in this manner. *Marek v. O.B. Gyne Specialists II, S.C.*, 319 Ill. App. 3d 690, 702 (2001), which plaintiff cites, addresses only when an amended complaint relates back to the original complaint so as to avoid the statute of limitations (see 735 ILCS 5/2-616(b) (West 2010)). That is a separate matter entirely.

¶ 9    *Zurich Insurance Co. v. Baxter International, Inc.*, 275 Ill. App. 3d 30 (1995), which plaintiff also cites, is also distinguishable. There, the plaintiff sought a declaratory judgment on whether it had a duty to defend or indemnify the defendant drug company against claims by numerous third parties (injured claimants). The trial court refused to entertain the

complaint, explaining that the failure to join the claimants deprived it of jurisdiction. The plaintiff filed a second complaint that realleged the same facts and legal theories but attempted to solve the jurisdictional problem by invoking the doctrine of representation or proceeding as a class action. The trial court also rejected this approach. (Our opinion does not state whether the court formally dismissed either complaint without prejudice.) The plaintiff then filed a third amended complaint that attempted to address the trial court's jurisdictional concerns by joining some of the injured claimants. The defendant moved to stay the action on the ground that the defendant had filed a more comprehensive action against the plaintiff in California (see 735 ILCS 5/2-619(a)(3) (West 1994)). The trial court granted the motion. *Zurich*, 275 Ill. App. 3d at 33-34.

¶ 10     After various procedural vicissitudes, we entertained an appeal in which the plaintiff argued, in part, that the trial court had erred in its rulings on the jurisdictional issue and on whether a class action was permissible. The defendant argued that the plaintiff had forfeited these issues by failing to reallege them in its amended complaints. We disagreed, holding that forfeiture did not apply under the circumstances. We noted that the issues that the plaintiff sought to raise concerned only procedural matters and that the amended complaints incorporated both the factual allegations and the substantive legal theories of the original complaint. Thus, unlike in *Foxcroft*, the plaintiff could not have avoided forfeiture simply by phrasing its amended complaints more broadly. Also, unlike in *Foxcroft*, the amended complaints' omissions did not restrict the substantive points at issue or force the trial court to speculate about which legal theories or claims the plaintiff intended to advance at trial. *Id.* at 36. That is not the situation here. Plaintiff completely abandoned one substantive theory of recovery and chose a different one, even though it could simply have incorporated the first theory into a two-count amended complaint. Having told the trial court that it would not resuscitate its claim for tortious interference, plaintiff may not do so here. Therefore, we consider the only issue properly before us: whether the trial court erred in dismissing plaintiff's claim for unjust enrichment.

¶ 11     The trial court dismissed the amended complaint for failure to state a claim upon which relief could be granted. See 735 ILCS 5/2-615 (West 2010). Our review is *de novo*. *Sherman v. Township High School District 214*, 404 Ill. App. 3d 1101, 1107 (2010). We ask whether the complaint's well-pleaded allegations, construed in the light most favorable to plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). To state a claim for unjust enrichment, a complaint must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). For the reasons that follow, we hold that the amended complaint does not meet this standard.

¶ 12     The well-pleaded facts in plaintiff's amended complaint are these. Two property owners became delinquent in paying their taxes. Plaintiff obtained a tax certificate to each property and filed a petition for a tax deed. Defendants purchased each property for less than its fair-market value shortly before the end of the redemption period. As a result, plaintiff could not obtain a tax deed to either property. The issue is whether these facts, and the reasonable

inferences to be drawn from them, show that defendants were *unjustly* enriched. We agree with defendants that they do not.

¶ 13 To explain our holding, we start by briefly reviewing the tax-sale process. Under the Property Tax Code (Code) (35 ILCS 200/1-1 *et seq.* (West 2010)), if taxes on a given property become delinquent, the county may apply for a judgment against and a sale of the property. See 35 ILCS 200/21-110, 21-115, 21-145, 21-180 (West 2010); *A.P. Properties, Inc. v. Goshinsky*, 186 Ill. 2d 524, 529 (1999). If the property owner does not pay the taxes first, the county may sell the property to the highest bidder, who then becomes liable to the county for the amount bid. 35 ILCS 200/21-190, 21-205, 21-240, 21-260 (West 2010); *Goshinsky*, 186 Ill. 2d at 529. Once the sale is judicially confirmed, the tax buyer receives a certificate of purchase. 35 ILCS 200/21-240, 21-260(c) (West 2010); *Goshinsky*, 186 Ill. 2d at 529. However, although the tax buyer may petition for a tax deed, any owner or person interested in the property (with an exception not pertinent here) has the right to redeem. 35 ILCS 200/21-345(a) (West 2010). Upon a timely redemption, the county may refund the tax buyer's payment, thereby releasing the tax buyer's claim on the property. 35 ILCS 200/21-390 (West 2010); *Goshinsky*, 186 Ill. 2d at 530. If the property is not redeemed, the county issues the tax buyer a tax deed. 35 ILCS 200/22-40 (West 2010); *Goshinsky*, 186 Ill. 2d at 530.

¶ 14 As can be seen, a tax buyer's rights under the Code are limited, and they do not include anything approaching an unqualified entitlement to a tax deed. Plaintiff's amended complaint freely concedes that few of its tax-sale purchases culminate in the award of tax deeds. Moreover, the effect of the tax-sale certificate itself is limited. The issuance of the certificate does not affect the delinquent owner's legal or equitable title to the property. *Phoenix Bond & Indemnity Co. v. Pappas*, 194 Ill. 2d 99, 101 (2000). An owner or interested party may redeem the property within the statutory period. In sum, "[w]hat a tax buyer acquires is a contingent right to possibly acquire title in the future." *In re McKinney*, 341 B.R. 892, 896 (Bankr. C.D. Ill. 2006).

¶ 15 The gravamen of plaintiff's amended complaint is that defendants unjustly enriched themselves by taking advantage of the property owners' dire economic circumstances in order to obtain the properties at bargain prices. According to plaintiff, defendants' retention of this benefit is unjust and violates public policy. Plaintiff's arguments for why this is so, however, are not easy to pin down. As plaintiff acknowledges, it can cite no authority holding that purchasing tax-delinquent property shortly before the expiration of the redemption period violates any statute or common-law rule. We add that our research has disclosed no authority remotely implying that such conduct creates liability in tort. Notably, nothing in the Code prevents anyone from doing what defendants did here. And, once defendants purchased either property, nothing in the Code prevented them from redeeming the property. Plaintiff does not contend otherwise.

¶ 16 What plaintiff does argue is that the type of conduct that defendants engaged in is unjust because "it harms and interrupts a statutorily approved process." Plaintiff maintains that defendants retained a benefit that would otherwise have passed to plaintiff. Of course, the Code does create an "approved process" and defendants did prevent plaintiff from obtaining title to the properties that defendants bought. However, defendants' acts did nothing to

-5-

subvert the "statutorily approved process." Instead, they were a normal incident of that process, and one that the legislature allowed. As noted, the Code does not prohibit anyone from purchasing tax-delinquent property from an owner who is willing to sell it. Plaintiff's assertion that defendants exploited the owners' straitened circumstances in order to obtain their properties cheaply is notable only for its sheer *chutzpah*. Plaintiff was trying to take advantage of the exact same circumstances for the exact same end. The owners decided that they would rather sell to defendants for something than forfeit the properties to a tax buyer who would pay them nothing.

¶ 17      To the extent that public policy weighs in, it militates *against* prohibiting the sale of tax-delinquent properties to willing purchasers before the redemption period expires. The Code's tax-sale provisions are intended "to enable owners to exercise their right of redemption *** at the lowest possible cost." *Pappas*, 194 Ill. 2d at 107. The goal of encouraging redemptions over forfeitures is served by allowing property to pass from weak hands to stronger ones and by allowing owners to bargain their way out of forfeitures. The mere fact that defendants chose to purchase the properties rather than engage in the "statutory process," as plaintiff chose, does not make defendants' acts inconsistent with the Code, the intent of the legislature, or any principles of justice.

¶ 18      Although not directly on point, an opinion from a sister jurisdiction supports our decision to favor redemptions over forfeitures. In *Adams v. Thorp Credit, Inc.*, 452 N.W.2d 435 (Iowa 1990), a tax buyer obtained a tax certificate to real property. Later, the property's mortgagee paid the county treasurer what, at the time, was the correct statutory amount to redeem the property, and the treasurer issued it a certificate of redemption. However, the tax buyer then completed proper service of her earlier notification of her intent to cut off the right of redemption; under the statute, this required the mortgagee to pay certain extra costs in order to complete the redemption. The mortgagee did not do so by the end of the redemption period, and the tax buyer demanded a tax deed. The treasurer brought a declaratory judgment action to resolve the competing claims of the mortgagee-redeemer and the tax buyer. *Id.* at 435-36.

¶ 19      The Iowa Supreme Court held for the mortgagee. The court noted that the statute at issue stated, " 'A redemption is not complete until the costs are paid.' " *Id.* at 436 (quoting Iowa Code § 447.13 (1987)). The court rejected the tax buyer's contention that this language invalidated the redemption certificate. In doing so, the court relied heavily on "the well-established public policy favoring redemption over forfeiture." *Id.* Because the redemption certificate had been properly issued, and only later developments had cast it into doubt, denying the mortgagee title would violate "the well-established public policy favoring redemption over forfeiture." *Id.*

¶ 20      We also choose our state's public policy favoring the redemption of tax-delinquent properties. See *Pappas*, 194 Ill. 2d at 107. We reject plaintiff's request that we ignore our state's public policy and instead stack the legal deck in favor of forfeiture over redemption.

¶ 21      Plaintiff maintains that defendants' conduct has harmed government entities and others who would benefit from the receipt of tax-sale revenues or the enrichment of the statutory indemnity fund. To the extent that this accusation is valid, it is the result of how our

legislature has chosen to set up the tax-sale and redemption process, and plaintiff's sympathy for counties and property owners is properly directed to the General Assembly rather than to this court. In any event, as a result of defendants' conduct, the county received the taxes that were due and the owners of the properties that defendants bought avoided forfeitures. Those facts do not support a claim of unjust enrichment.

¶ 22 Although plaintiff did not preserve its argument that it stated a cause of action for tortious interference, we note that the preceding analysis would establish that plaintiff did not plead that it ever had a business relationship, contract, or reasonable expectancy of entering into a business relationship with a third party. As a tax-sale purchaser, plaintiff acquired only the "contingent right to possibly acquire title in the future" (*McKinney*, 341 B.R. at 896)–a possibility that the property owner could frustrate at any time by exercising the right of redemption. Plaintiff's hope that it could acquire tax-delinquent property falls far short of any reasonable expectation that it would do so–even if, *arguendo*, the acquisition of a tax deed could be considered a business relationship with either the defaulting taxpayer or the county.

¶ 23 Plaintiff's amended complaint did not state a claim upon which relief could be granted, and the trial court thus did not err in dismissing it. Therefore, the judgment of the circuit court of Lake County is affirmed.

¶ 24 Affirmed.